811 A.2d 910 (2002)
356 N.J. Super. 118
Gladys MOSLEY, Plaintiff/Appellant,
v.
FEMINA FASHIONS, INC., Defendant/Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 2002.
Decided December 4, 2002.
*911 *912 Alan L. Krumholz, Jersey City, argued the cause for appellant.
John A. Craner, Scotch Plains, argued the cause for respondent (Craner, Satkin & Scheer, attorneys; Mr. Craner, on the brief).
Before Judges PRESSLER, WALLACE, Jr., and AXELRAD.
The opinion of the court was delivered by
WALLACE, Jr., J.A.D.
This is a handicap discrimination case. Plaintiff Gladys Mosley can neither hear nor speak. She filed a complaint against her former employer, defendant, Femina Fashions, Inc., alleging in part that (1) she was discharged in retaliation for complaining to her supervisor that she was compelled to work overtime without being paid in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to 34:19-8; (2) defendant's failure to pay her overtime violated the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a; (3) defendant failed to keep appropriate records reflecting the overtime hours plaintiff worked, 9 U.S.C. § 201 et seq; and (4) she was discriminated against because of her handicap in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to 10:5-49. Prior to trial, the trial court dismissed the third count of the complaint, failing to keep records. The case was tried before a jury. After all the evidence was presented, but prior to the jury's deliberations, the trial court granted defendant's motion to dismiss the remaining counts in the complaint. Plaintiff's motion for a new trial was denied.
On appeal, plaintiff urges that (1) she presented sufficient evidence of wage violations and it was error to dismiss her claim as speculative; (2) she established a prima facie case under CEPA; (3) she established a prima facie case of handicap discrimination under LAD disability; and (4) the proposed settlement agreement should have been enforced. We affirm the dismissal of the CEPA claim and the denial of plaintiff's motion to enforce the settlement, and reverse the dismissal of plaintiff's wage and LAD claims.

I
Plaintiff is unable to hear or speak. Sign language experts were furnished for her at trial. Plaintiff began her employment with defendant in 1984 as a seamstress and was paid an hourly wage. Beginning in 1988, however, she claimed she was required to work beyond the regular quitting time of 3:30 p.m. without compensation. Sometimes she was permitted to punch her time card at 4:30 p.m., but she was required to work late every day. Plaintiff submitted into evidence the time cards she received from defendant during discovery, but defendant did not produce all of the time cards. Otherwise, plaintiff did not have any record of the hours she worked without pay.
*913 Plaintiff claimed her supervisor, Rita Padilla, continuously said her production was deficient and required her to remain after the end of the regular work day to finish the work without pay. This routinely happened. Plaintiff described how Padilla instructed her to work.
She would show me this sheet that would show the previous day's work the productivity and she'd point to it and just point down and then she would put down 5:30. She would put down that you can only charge till 4:30 and sometimes she would pull it back to 3:30.
* * *
Mymy time card would be punched with whatever time I was told to punch out. I had to stay and work until my productivity met what was on the production sheet because they wanted to boost the numbers.
Plaintiff remembered one other worker who punched out at 4:30 and continued to work, but that person left the employment.
Plaintiff recalled that Padilla and Harry Mark, the general manager, were present at the plant after 4:30. Sometimes Mark would drive her home. She complained about working without pay, but she got no response from either Padilla or Mark. She did not report defendant's failure to pay overtime to a governmental agency because she was afraid that Padilla "would really get mad and I would get into trouble and it's hard for me to find a job."
In March 1998, an incident occurred which caused her to leave her employment. On Monday, March 2, 1998, plaintiff noticed Mark held her time card as he spoke with Padilla. Mark then came to her and complained that her production was too low. Plaintiff looked at her card and realized that Mark had changed her time card for Friday to show the clockout time was 2:30 p.m. instead of 3:30 p.m. She calculated she lost three hours of time because she had worked until at least 5:30 p.m. on Friday. She was upset and looked for Padilla to voice her concerns. Plaintiff subsequently argued with Padilla over the change of her time card. Padilla replied she did not care and told plaintiff to get out several times. Plaintiff continued to work, but she was quite upset. She remained on the job until around 6:00 p.m., when she left.
When plaintiff arrived home, she reported the incident to her companion, Antonio Nieves, and to her daughter. Nieves was also employed by defendant, but he left each day at 3:30 p.m. Plaintiff expressed fear that she would lose her job. She was still upset the following day and decided not to go to work. Plaintiff never contacted defendant again. She explained she was quite upset and "feeling like I was working for free."
Plaintiff acknowledged defendant called her and that Nieves told her defendant wanted her to return to work. She began to look for other employment, but could not find another job. She looked in New York as well as New Jersey. She still had not obtained other employment at the time of trial.
On cross-examination, plaintiff was questioned about the March 2 incident and whether she said anything about the prior problems she had about working without pay after 3:30 or 4:30 p.m. Plaintiff replied, "Yes, I absolutely did. I was telling Rita [Padilla] about those problems which then led to the argument, which then led to her telling me to get out." Plaintiff explained she complained March 2 and many other days that she disliked working for no pay. Plaintiff reiterated that from 1988 to 1998 she worked every day at least one hour after quitting time without pay. She admitted, however, that during the months of June, July, and August, the *914 work was slow, so she did not work after normal hours. She never complained to the union out of fear of losing her job. She knew of another employee who was fired in 1989 for having "reported to the union."
Plaintiff recalled that her "deaf" friend, Anita Delgado, told her she worked overtime without pay for a while, but she no longer does that.
Debra Aldridge testified on behalf of plaintiff. She worked for defendant from 1991 to 1999. She recalled that defendant asked her to work overtime without pay, but she refused to do it. She said the normal work hours were until 3:30 p.m. and sometimes 4:30 p.m. Aldridge noticed that plaintiff always remained at work after Aldridge clocked out at 3:30 p.m. Aldridge asked plaintiff why she stayed and plaintiff told her defendant required her to stay because her production was low. Aldridge believed that plaintiff was one of the best workers and top producers on the job.
Plaintiff called Mark as a witness. Mark described himself as general manager, supervisor of defendant and described Padilla as manager of the sewing operation. He frequently stayed until 5:30 p.m. and plaintiff was still there working. He sometimes drove her home or to the bus. Mark claimed that plaintiff would stay late to sew her own garments. She was a valuable employee and had the freedom to stay after quitting time. He said the plant closed for two or three weeks in the summer.
Nieves testified on behalf of plaintiff. Nieves lived with plaintiff. He began working for defendant in 1992 and left in October 1998. His normal work hours were from 8:00 a.m. until 3:30 p.m. He confirmed that plaintiff arrived home from work between 5:30 and 6:00 p.m. almost everyday. Nieves complained to Padilla in 1994 about plaintiff working without pay and threatened to report it to the Labor Board. Padilla told him he could go to the "White House" for all she cared. He saw some improvement in plaintiff's work hours for a while before plaintiff resumed arriving home late again.
At the conclusion of plaintiff's case, defendant moved to dismiss the complaint. The trial court reserved decision on the motion. Defendant renewed the motion to dismiss after all the evidence was presented. This time the trial court granted the motion. The court found there was no violation of CEPA because plaintiff had not proven she had been discharged. Further, the trial court dismissed plaintiff's claim for failure to pay wages because the jury would have to speculate as to the amount of her damages. Regarding the disability discrimination charge, the court found plaintiff established she was handicapped, that defendant was aware of her handicap, and that plaintiff was qualified for the job, but that she failed to establish any causal relationship or any adverse employment action initiated by defendant because of her handicap.

II
We first address plaintiff's argument that it was error for the court to deny her motion to enforce a settlement the parties reached prior to trial.
On November 5, 1999, defendant's prior counsel wrote to plaintiff's attorney confirming the parties' agreement to settle the litigation, but that such settlement was "contingent upon your client's execution of a general release and a Settlement Agreement which contains a strict confidentiality provision, a non-cooperating clause, a non-disparagement provision, and a non-admission of liability by my client, among other things." Nothing more was done until December 2, 1999, when defendant's substituted *915 counsel wrote plaintiff's counsel informing him of his representation and that any settlement effort by prior counsel was deemed null and void.
Plaintiff filed a motion to enforce the settlement. Plaintiff's attorney certified that on November 5, 1999, he received the offer to settle, he sent a letter to plaintiff on that day informing her of the offer, the offer was accepted and on December 2, 1999, he received a letter advising that the settlement was not approved by defendant. The court found that while the money portion of the proposed settlement was clear, the offer of settlement was contingent upon plaintiff executing a settlement agreement containing various terms including a non-admission of liability clause. The court concluded because the contingencies were never drafted or approved, the settlement was unenforceable.
We recognize "`[s]ettlement of litigation ranks high in our public policy.'" Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990) (quoting Jannarone v. W.T. Co., 65 N.J.Super. 472, 476, 168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961)). Before a settlement agreement may be enforced, however, there must be an agreement to the essential terms of the agreement. Here, the defendant listed several contingencies in the offer of settlement. The contingencies were never realized because the parties failed to execute a settlement agreement consistent with the required contingencies. We are in complete accord with the trial court and affirm the denial of plaintiff's motion to enforce the settlement for the reasons set forth in the trial court's oral opinion from the bench on December 6, 2000.

III
Plaintiff contends the trial judge erred in concluding she failed to establish a prima facie violation of CEPA. Specifically, plaintiff contends she was constructively discharged for complaining about working overtime without pay.
"The purpose of CEPA is to protect employees who report illegal or unethical work-place activities." Barratt v. Cushman & Wakefield, 144 N.J. 120, 127, 675 A.2d 1094 (1996). CEPA prohibits an employer from taking retaliatory action against an employee who discloses to "a supervisor or to a public body an activity, policy or practice of the employer ... that the employee reasonably believes is in violation of a law...." N.J.S.A. 34:19-3a. The employee must notify the employer of the violation of the law to give the employer a reasonable opportunity to correct the unlawful conduct. N.J.S.A. 34:19-4; Barratt, supra, 144 N.J. at 130, 675 A.2d 1094.
In order to establish a prima facie case of a CEPA violation, plaintiff must establish: (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described in N.J.S.A. 34:19-3a, c(1) or c(2); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Kolb v. Burns, 320 N.J.Super. 467, 476, 727 A.2d 525 (App. Div.1999).
Because the court granted judgment in favor of defendant prior to the conclusion of the jury trial, we view the evidence in the most favorable light for plaintiff. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). There was evidence to show that on March 2, 1998, plaintiff learned that her time card for Friday, February 27, 1998, was changed to reduce her time by at least one *916 hour. She complained to her supervisor and also complained about prior occasions when she worked after 3:30 p.m. without compensation. If plaintiff worked the hour, and the employer changed her time card to reflect she worked one hour less, this would be a violation of the law. Plaintiff's conduct in disputing this action and complaining to her supervisor was sufficient to establish she reported wrongful conduct to her employer.
The missing requirement is plaintiff's failure to establish retaliatory action taken by her employer resulting from her whistle-blowing activity. Plaintiff testified she continued to work after her supervisor told her to leave. Padilla never fired plaintiff, and the general manager offered to drive her home at the end of the day. The next day, plaintiff felt she could not work under those conditions. Despite the efforts of the employer to have her return, plaintiff failed to do so. Plaintiff never returned to work to discover if defendant would correct the asserted wrongful conduct. Instead, plaintiff chose to leave her job and look for other employment. Consequently, plaintiff failed to establish defendant took any adverse employment action against her for reporting a violation of the wage laws.

IV
Plaintiff contends she established a prima facie case under the New Jersey Wage and Hour Law. Specifically, she contends it was error for the court to conclude her evidence of damages was too speculative for the jury to decide damages.
The court found plaintiff established a prima facie case that she worked without compensation, but concluded the jury could not determine damages without speculating as to the number of hours plaintiff worked without pay. In reaching this conclusion, the court noted that plaintiff admitted she did not work fifty-two weeks per year, that the normal work week varied between thirty-five and forty hours per week and the factory was shut down at times.
It is well-settled that the "law abhors damages based on mere speculation." Caldwell v. Haynes, 136 N.J. 422, 442, 643 A.2d 564 (1994) (citation omitted). However, "[d]amages need not be proved with precision where that is impractical or impossible." Borough of Fort Lee v. Banque National de Paris, 311 N.J.Super. 280, 291, 710 A.2d 1 (App.Div. 1998) (citation omitted). Moreover, "[w]here a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recoverycourts will fashion a remedy even though the proof on damages is inexact." Kozlowski v. Kozlowski, 80 N.J. 378, 388, 403 A.2d 902 (1979) (citations omitted). See also Lane v. Oil Delivery, Inc., 216 N.J.Super. 413, 420, 524 A.2d 405 (App.Div.1987)(damages should be proved with "such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate").
Applying these principles, we are convinced the trial court took too restrictive a view of the evidence in determining that plaintiff's evidence was too speculative for the jury to decide damages. Viewing the evidence on damages in the light most favorable to plaintiff, there was sufficient evidence for the jury to calculate damages without speculation. That evidence included that plaintiff worked each day at least one hour and sometimes two hours, without pay on a daily basis except for the months of June, July, and August when the work was slow and or the factory was closed. Moreover, the time records for plaintiff and plaintiff's pay stubs for 1995 *917 through 1998 were available for the jury to make any further adjustment deemed necessary to determine the number of hours worked for the period. Further, the evidence established that plaintiff remained at work on Friday, February 27, 1998, until 5:30 or 6:00 p.m., while her time card was changed by Mark to reflect a clock-out time of 2:30 p.m. On Monday, March 2, plaintiff clocked out at 3:30 p.m., but was still on the job until around 6:00 p.m. We are satisfied there was sufficient evidence in the record for the jury to make a fair and reasonable estimate of the damages plaintiff suffered.

V
We turn now to address plaintiff's argument that it was error to dismiss her claim for unlawful discrimination by her employer because of her handicap. The trial court dismissed plaintiff's discrimination claim because there was no evidence of any adverse economic action taken by defendant as a result of plaintiff's handicap.
Our LAD provides in pertinent part that it is an unlawful employment practice "[f]or an employer, because of the race, creed, color, national origin, ancestry . . . of any individual ... to discharge ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment...." N.J.S.A. 10:5-12(a). This prohibition also applies to "any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1. "Handicapped" is defined as "suffering from physical disability ... which is caused by bodily injury, birth defect or illness...." N.J.S.A. 10:5-5(q). Defendant acknowledges that plaintiff is handicapped.
The Legislature has directed "that [the LAD] shall be liberally construed in combination with other protections available under the laws of this State," N.J.S.A. 10:5-3, and shall be construed "fairly and justly with due regard to the interests of all parties." N.J.S.A. 10:5-27. The courts have noted that the "[LAD] is remedial social legislation ... deserving of a liberal construction." Clowes v. Terminix Intern., Inc., 109 N.J. 575, 590, 538 A.2d 794 (1988); Enriquez v. West Jersey Health Sys., 342 N.J.Super. 501, 517, 777 A.2d 365 (App.Div.2001).
Ordinarily, in order to establish a prima facie case of handicap discrimination under the LAD in the employment context, the employee must prove (1) that she is handicapped within the meaning of the law; (2) that she was performing her job appropriately; (3) that she was terminated; and (4) the employer sought someone to perform the same work after she was terminated. See Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382, 541 A.2d 682 (1988). These factors provide a general framework and must be modified where appropriate. That is, our courts have not hesitated to modify the appropriate factors for evaluating a discrimination claim if a rigid application of the normal standards "is inappropriate under the circumstances." Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 107, 570 A.2d 903 (1990).
While most of the reported cases have involved termination or refusal to hire a handicapped employee, the statute provides that it is unlawful to discriminate against a handicapped person in "compensation or in terms, conditions, or privilege of employment." N.J.S.A. 10:5-12. *918 In a handicap discrimination case, where the employee is alleging discrimination in the terms and conditions of employment, fairness requires modification of the prima facie case. The third factor of discharge should be modified to include adverse employment action. Additionally, the fourth factor that the employer sought other employees is not required here. Rather, plaintiff must show a causal connection between her handicap and the adverse employment action. This is consistent with the fourth requirement in the CEPA context, where the employee must establish a causal relationship between the whistle blowing activity and the adverse employment action. See, supra, Point III.
It is not disputed that plaintiff is handicapped and defendant did not dispute that plaintiff was adequately performing her job. The essential question is whether plaintiff was subject to adverse employment action because of her handicap.
According to plaintiff, defendant's supervisors repeatedly reported her production was deficient and she needed to "make" up for such deficiency by working extra hours without pay. Plaintiff expressed fear of losing her job if she failed to comply as well as the difficulty she would have in trying to obtain other employment as a result of her handicap. It was her vulnerability as a handicapped person that enabled defendant to continuously require plaintiff to work extra hours without pay.
Applying the modified test, we are satisfied that viewing the evidence in the light most favorable to plaintiff, a jury could reasonably find that defendant took advantage of and exploited plaintiff, knowing that plaintiff would not protest due to her handicap.
In short, plaintiff presented sufficient evidence for a jury to determine whether she established a causal connection between her handicap and the adverse employment action, i.e. having to work without pay.

VI
In conclusion, we affirm the denial of plaintiff's motion to enforce the alleged settlement and the dismissal of her CEPA claim; we reverse and remand for trial plaintiff's wage and LAD claims.