**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3862-16T3

ROCCO PICCIOLO,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

JOHN H. RITTLEY, ESQ., and
LAW OFFICES OF JOHN H.
RITTLEY, LLC,

      Defendants-Respondents/
      Cross-Appellants.

_____

Argued October 18, 2018 – Decided May 15, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-3108-08.

Angela M. Roper argued the cause for appellant/cross-respondent (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, on the briefs).

Meredith Kaplan Stoma argued the cause for respondents/cross-appellants (Morgan Melhuish

Abrutyn, attorneys; Meredith Kaplan Stoma, of counsel; Jeffrey S. Leonard, on the briefs).

PER CURIAM

This legal malpractice action is back to us following a remand.[1] Plaintiff Rocco Picciolo appeals from the April 19, 2017 Law Division order granting summary judgment to defendants John H. Rittley, Esq. and the Law Offices of John H. Rittley, LLC (collectively defendant) and dismissing the complaint with prejudice. Defendant cross-appeals from the June 2, 2017 order denying his prior motion for summary judgment.[2] We affirm the April 19, 2017 order and reverse the June 2, 2017 order for reasons in addition to those expressed by the motion judge. See Aquilio v. Cont'l Ins. Co. of N.J., 310 N.J. Super. 558, 561 (App. Div. 1998).

Defendant represented plaintiff in a matrimonial matter. On May 29, 2007, adversary counsel sent a settlement offer to defendant's office, which contained twenty proposed settlement terms (the settlement offer). Among those terms was the wife's agreement to waive alimony "provided that equitable

---

[1] See Picciolo v. Rittley, No. A- 5007-13 (App. Div. Dec. 3, 2015).

[2] The motion judge heard argument on the prior summary judgment motion on October 28, 2016, but did not enter an order until June 2, 2017.

distribution is paid to her as set forth [in the settlement offer]." Adversary counsel made clear that the wife's "waiver of alimony [was] of great value and therefore the equitable distribution portion [of the settlement offer] is the consideration she <u>must</u> receive in order to waive that right." (Emphasis added). The wife sought equitable distribution of the marital home, plaintiff's pension, and his deferred compensation account.

Defendant was out of the office when the settlement offer arrived, due to his father's death. On May 31, 2007, defendant's paralegal telephoned plaintiff, advised him of the settlement offer, faxed him a copy, and asked for his comments.

The parties disagreed as to what happened next. Plaintiff claimed he advised the paralegal that he was willing to accept the settlement offer, but the paralegal instructed him to write down what he thought should be changed.

Defendant claimed that plaintiff telephoned his office and left a message that the settlement offer was unacceptable and that he was making changes to the proposed settlement, and wanted defendant to submit a counteroffer to adversary counsel. In a May 31, 2017 email from plaintiff to the paralegal, plaintiff stated, "[a]ttached are my comments to [adversary counsel's] proposed settlement. Not much of a settlement!" Plaintiff disagreed with or questioned

fourteen of the twenty proposed settlement terms, and provided his desired changes. Specifically, plaintiff did not agree with the equitable distribution and custody terms and the terms requiring him to pay one hundred percent of college expenses for the parties' two children, certain expenses relating to the children such as clothing, summer camp, and unreimbursed medical, dental, prescription and optical expenses, and $9500 for his wife's attorney's fees.

On June 5, 2007, defendant emailed to plaintiff a copy of defendant's proposed counteroffer to adversary counsel, which incorporated plaintiff's desired changes. The counteroffer indicated that plaintiff accepted certain settlement terms with modifications and rejected several others, including custody, equitable distribution, and payment of college expenses. Defendant advised plaintiff:

> [The paralegal] sent me [adversary counsel's] offer, your written wishes and your feeling that this is a setup. I agree with you that [the wife] is playing games. This is a 180 from where we were [two] weeks ago. As we discussed in April, proposals are not [C]hinese menus where you get to pick and choose, both of you need to agree on all the terms. [In line] with our instructions, our counteroffer will probably not go anywhere but we need to start the ground work. [Adversary counsel] is probably awaiting the [Early Settlement Panel].
>
> Please review my letter carefully, it outlines what we discussed previously [i]ncorporating your comments. Let me know any changes you want to make–shoot me

A-3862-16T3

an email or call either of us on [what] you want, we will make ourselves available, as I [will] be on the road. [The paralegal] will send out the proposal if she does not get any comments from you by close of business tomorrow. I will then follow [] up with [adversary counsel] to see if we are any closer to an agreement.

On June 6, 2007, the paralegal telephoned plaintiff and left a message asking him to submit any changes to the counteroffer by the end of the day. Receiving no response from plaintiff, defendant sent the counteroffer to adversary counsel the next day. Plaintiff claimed he received the counteroffer after defendant had already sent it to adversary counsel and never authorized defendant to make the counteroffer.

Adversary counsel rejected the counteroffer. The matrimonial litigation continued, during which plaintiff and his wife continued living together in the marital home under contentious circumstances. Plaintiff claimed he suffered a permanent eye injury when his wife assaulted him on October 13, 2007. Defendant referred plaintiff to a certified civil and criminal attorney who valued plaintiff's Tevis[3] claim at between $20,000 and $30,000.

Over a year after the rejection of the counteroffer, plaintiff and his wife agreed to a settlement during mediation without their attorneys present. On June

---

[3] Tevis v. Tevis, 79 N.J. 422 (1979).

A-3862-16T3

13, 2008, they executed a property settlement and support agreement (PSA), which was incorporated into their dual final judgment of divorce. The terms of the PSA were similar to the terms of the settlement offer, except plaintiff was required to pay permanent alimony, which would terminate on the wife's death, or remarriage, repudiation or modification of the PSA by the parties' mutual consent, death of plaintiff, or the wife's cohabitation with an unrelated person. The PSA required the wife to pay child support and contribute to the children's college expenses, which differed from the settlement offer. In addition, there were certain equitable distribution provisions that differed from the settlement offer, which were more favorable to plaintiff, and plaintiff paid only $4000 for his wife's attorney's fees.

Plaintiff subsequently filed a complaint against defendant, alleging defendant breached his duty of care by failing to advise adversary counsel that plaintiff wanted to accept the settlement offer, and by rejecting it without plaintiff's authorization. Plaintiff claimed that as a result of defendant's failure to accept the settlement offer, plaintiff had to continue living with his wife, sustained a permanent eye injury when she assaulted him, received a less favorable settlement requiring him to pay permanent alimony, and incurred

A-3862-16T3

increased legal fees. Plaintiff also claimed defendant breached his duty of care by failing to properly evaluate his Tevis claim.

Plaintiff's liability expert, Patrick T. Collins, Esq., acknowledged that the terms of the PSA were "quite similar" to the settlement offer and some provisions of the PSA were more beneficial to plaintiff, except for the permanent alimony provision. Collins had admitted at his deposition that he was not an expert on damages and did not offer an opinion on damages in his expert's report. He also admitted that plaintiff had no damages expert[4] and he lacked the expertise to evaluate plaintiff's Tevis claim.

Nevertheless, Collins testified at his deposition that plaintiff sustained $114,000 in damages. However, in arriving at this amount, Collins did not compare the settlement offer to the PSA, and he only considered plaintiff's payment of permanent alimony and not any of the benefits plaintiff derived from the PSA to offset the damages amount. For example, Collins did not consider the $85 per week plaintiff received in child support, the reduced amount of the wife's attorney's fees plaintiff paid, or the fact that the wife would contribute to the children's college expenses. Collins also did not analyze the attorney's fees plaintiff incurred. Collins speculated that plaintiff would pay alimony until age

_____

[4] Plaintiff had retained a Tevis expert, but the expert, an attorney, was disbarred.

A-3862-16T3

sixty-five, and admitted the damages amount was "just [as] good a ballpark [amount] as [he] could arrive at."

In addition, Collins testified that the settlement offer could not have been accepted unconditionally but "should have been accepted with qualifications." For example, Collins testified that the equitable distribution term regarding the marital home should have been accepted with qualifications because it contained a flawed valuation methodology. He maintained that with "T crossings and I dottings that need to happen, the ultimate disposition of many issues [was] fairly well preordained" and "would be rather certain to lead to a settlement." He admitted, however, that if plaintiff had accepted that equitable distribution term with qualifications, adversary counsel could have legally rejected those qualifications.

Collins also testified that the settlement term requiring plaintiff to pay one hundred percent of the college expenses "was not a serious one in this case. And [he could not] envision that it was a position that would have held because that simply never happens." Collins admitted that adversary counsel could have rejected plaintiff's acceptance of that specific provision with qualifications. Collins also acknowledged that

> it is an impossibility that [adversary counsel] or [the ex-wife] truly believed that that was going to be a

component of the settlement. That was what . . . matrimonial attorneys often call a gimmie. You know, you put something out there that nobody honestly thinks is going to be a part of the settlement and you concede to the norm.

Collins concluded that "[t]his case could not possibly have come to resolution with [the parties] agreeing to [the college expenses] provision. No court could possibly have adjudicated it and nobody would have agreed to it."

On remand, defendant moved for summary judgment, arguing, in part, that Collins rendered an inadmissible net opinion.[5] The motion judge noted that Collins's opinion came close to a net opinion and "barely" met the applicable standard under Hisenaj v. Kuehner, 194 N.J. 6, 24 (2008). However, the judge concluded "there [was] sufficient information for the fact finder to make a decision without engaging in any type of speculation on the issue of damages."

Defendant later filed a motion in limine to bar Collins's testimony and to dismiss the complaint with prejudice for lack of expert evidence. Plaintiff did not file opposition. Plaintiff's attorney appeared at oral argument and conceded that Collins testified the settlement offer should have been accepted with

---

[5] Plaintiff had no Tevis expert at the time of the motion. He subsequently retained a new Tevis expert.

A-3862-16T3

qualifications and adversary counsel could legally have rejected those qualifications.[6]

After reviewing Collins's deposition testimony, the judge pointed to the college expenses term and found this was an essential term that Collins agreed could not be accepted. The judge concluded there was no enforceable settlement agreement because the settlement offer was an offer that could not have been accepted, and if it was accepted with qualifications, that was a counteroffer that could be rejected. The judge did not address damages.

On appeal, plaintiff contends the judge improperly invaded the province of the jury and engaged in credibility determinations and fact-finding in granting summary judgment to defendant. Plaintiff argues it was for the jury to determine whether his acceptance of the settlement offer with qualifications and "tweaks"

---

[6] The attorney did not raise any argument regarding plaintiff's newly retained Tevis expert, and the expert's report is not in the motion record but is included in plaintiff's appendix. In his reply brief, plaintiff argues for the first time on appeal that his Tevis expert established damages. We cannot consider issues such as this that were not presented to the trial court, are not jurisdictional in nature, and do not substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014). In addition, we will not consider an issue raised for the first time in a reply brief that does not present a matter of great public interest. See Goldsmith v. Camden Cty. Surrogate's Office, 408 N.J. Super. 376, 387 (App. Div. 2009). We also will not consider documents included in the appendix that were not presented to the trial court. See N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007).

would have resulted in an enforceable settlement agreement that would have relieved him of the obligation to pay permanent alimony.

The question as to whether the parties have entered into an enforceable settlement agreement is a question of law for the court to determine. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009). Accordingly, the judge did not invade the jury's province in deciding whether plaintiff's acceptance of the settlement offer with qualifications would have resulted in an enforceable settlement agreement. We thus consider whether summary judgment was proper.

"When granting a motion [in limine] will result in the dismissal of a plaintiff's case or the suppression of a defendant's defenses, the motion is subject to Rule 4:46, the rule that governs summary judgment motions." Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 471 (App. Div. 2015).

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell

Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

> [S]ummary judgment [must] be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying the above standards, we discern no reason to reverse.

To establish a claim of legal malpractice, the plaintiff must prove: "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation" of the client's damages. Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996) (quoting

Lovett v. Estate of Lovett, 250 N.J. Super. 79, 87 (Ch. Div. 1991)). There is no dispute as to the first element. At issue are the second and third elements.

To establish the second element, the plaintiff must present expert testimony, when required, on the issue of breach. Stoeckel v. Twp. of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006). "Expert testimony is required in cases of professional malpractice where the matter to be addressed is so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). Where "the adequacy of an investigation or the soundness of an opinion is the issue, a jury will usually require the assistance of an expert opinion." Id. at 11.

Plaintiff cannot establish the second element. A settlement of a legal claim between parties is a contract like any other contract. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) (quoting Bistricer v. Bistricer, 231 N.J. Super. 143, 145 (Ch. Div. 1987)). There is a settlement only if there is an

agreement to essential terms. Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 126 (App. Div. 2002). However, the court will not enforce a settlement "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." Kupper v. Barger, 33 N.J. Super. 491, 494 (App. Div. 1955).

"A written contract is formed when there is a 'meeting of the minds' between the parties evidenced by a written offer and an unconditional, written acceptance." Morton v. 4 Orchard Land Tr., 180 N.J. 118, 129-30 (2004) (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538-39 (1953)). To constitute a valid binding contract the proposal of the one party must be met by an unqualified acceptance by the other party and that the acceptance must correspond entirely with the essential terms contained in the proposal. Graziano v. Grant, 326 N.J. Super. 328, 339-40 (App. Div. 1999). A qualified or conditional acceptance containing terms and conditions not found in the original proposal may operate as a counteroffer but does not constitute an acceptance and does not result in the formation of a valid contract binding upon the parties. Ibid. "A counteroffer operates as a rejection because it implies that the offeree will not consent to the terms of the original offer and will only enter into the

transaction on the terms stated in the counteroffer." Berberian v. Lynn, 355 N.J. Super. 210, 217 (App. Div. 2002). Therefore, there is no binding contract at the time of a counteroffer. Morton, 180 N.J. at 130.

Plaintiff did not give an unqualified acceptance that corresponded entirely with the essential terms contained in the settlement offer. Rather, as Collins testified, the settlement offer could not be accepted unconditionally and "should have been accepted with qualifications" not found in the settlement offer. Such a qualified or conditional acceptance operates as a counteroffer, not an acceptance, and does not result in the formation of a valid, binding contract. Graziano, 326 N.J. Super. at 339-40. Thus, even if defendant had accepted the settlement offer with qualifications, that qualified acceptance would not have resulted in an enforceable settlement agreement. Morton, 180 N.J. at 130.

Further, college expenses and equitable distribution are essential and material terms in matrimonial matters where these issues are present. Plaintiff's wife conditioned her waiver of permanent alimony on plaintiff's acceptance of all of the equitable distribution terms in the settlement offer. Plaintiff did not agree to the equitable distribution terms or the college expenses term of the settlement offer without qualifications that would have substantially altered those terms. Thus, there was no enforceable settlement agreement. Because

15

there was no enforceable settlement agreement, plaintiff cannot prove defendant breached his duty of care, warranting the grant of summary judgment and dismissal of his complaint with prejudice.

For the sake of completeness, we address the third element of a malpractice claim. To establish the third element, the plaintiff "must demonstrate that he or she would have prevailed, or would have won materially more . . . but for the alleged substandard performance." Lerner v. Laufer, 359 N.J. Super. 201, 221 (App. Div. 2003). The plaintiff must present proof of actual damages as a result of the breach. Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993). "[T]he measure of damages is ordinarily the amount that the client would have received [or would not have had to pay] but for his attorney's negligence." Gautam v. DeLuca, 215 N.J. Super. 388, 397 (App. Div. 1987). Ordinarily, the measure of damages is what result the client would have obtained in the absence of attorney negligence. Conklin, 145 N.J. at 417. As we have stated:

> Where a wrong has been committed and damages have resulted, mere uncertainty as to the amount of damages will not preclude a recovery even though proof of the amount of damages is inexact. Evidence which affords a basis for estimating damages with some reasonable degree of certainty is sufficient to support an award.

> [Viviano v. CBS, Inc., 251 N.J. Super. 113, 129 (App. Div. 1991) (citation omitted).]

However, the "law abhors damages based on mere speculation." Mosley, 356 N.J. Super. at 128 (quoting Caldwell v. Haynes, 136 N.J. 422, 442 (1994)). The plaintiff must lay a foundation that allows the factfinder to reach a fair and reasonable estimate of damages with sufficient certainty. Id. at 128-29. A legal malpractice plaintiff does not satisfy this burden by "mere 'conjecture, surmise or suspicion.'" 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994) (quoting Long v. Landy, 35 N.J. 44, 54 (1961)). Damages must be proven through "competent credible evidence which proves material facts". Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982).

Because there was no enforceable settlement agreement, plaintiff cannot prove he would have prevailed. Assuming there was an enforceable settlement agreement, plaintiff cannot prove actual damages. Collins did not compare the settlement offer to the PSA and only considered plaintiff's payment of permanent alimony in calculating damages. Collins did not consider any of the benefits plaintiff derived from the PSA to offset the damages and did not analyze plaintiff's attorney's fees. Among other things, Collins did not offset the alimony amount plaintiff would have to pay against the college expenses he no longer was obligated to pay or the funds plaintiff would receive from child

17

support.  Collins merely gave an estimated "ballpark" amount based on speculation.  See 2175 Lemoine Ave. Corp., 272 N.J. Super. at 488. Accordingly, plaintiff cannot satisfy his burden to prove defendant's alleged malpractice proximately caused damages.

The April 19, 2017 order is affirmed and the June 2, 2017 order is reversed.[7]

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7]  Having reached this conclusion, we need not address whether Puder v. Buechel, 183 N.J. 428 (2005), barred plaintiff's malpractice claim.

A-3862-16T3