**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2687-23

RONALD SCHECHTER,

     Plaintiff-Respondent,

v.

SOCIETY HILL EAST
CONDOMINIUM
ASSOCIATION, INC.,

     Defendant-Appellant.

_____

> Submitted September 15, 2025 – Decided October 29, 2025
>
> Before Judges Natali and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. SC-001003-23.
>
> Cutolo Barros, LLC, attorneys for appellant (James F. Vislosky, Jr. and Jennifer M. Kurtz, on the briefs).
>
> Ronald Schechter, respondent pro se.

PER CURIAM

Defendant Society Hill East Condominium Association, Inc., appeals from an order of the Special Civil Part, Small Claims Section, entered after a bench trial, awarding plaintiff Ronald Schechter $1,600 as compensation for repairs he made to his unit, and $42 in court costs. The judge concluded plaintiff's damages related to defendant's failure to remediate defects in the condominium's common elements. Based upon our review of the record and applicable legal principles, we affirm.

Defendant is a New Jersey non-profit corporation that operates Society Hill East Condominiums in East Brunswick, a 414-unit complex. Plaintiff, a retired engineer, and his wife, have owned a unit at Society Hill and resided there for over forty years. Plaintiff also previously served as a member of the defendant's board for approximately five-and-a-half years.

As the trial record reveals, over a four-year period, plaintiff experienced repeated freezing of the toilet water supply line pipe located in a bathroom adjacent to an exterior wall. Plaintiff stated the pipe continued to freeze during inclement weather, despite his efforts to warm and insulate the pipe.

Commencing in February 2019, plaintiff submitted multiple, unsuccessful requests to defendant asking that it investigate and correct the issue related to the water supply pipe, which he asserted was defendant's responsibility under

the relevant operating documents, because it was caused by a lack of insulation in the interior wall, a common element. After his initial work request on the pipe was "closed" without explanation, the supply line pipe froze again the following winter. Plaintiff insulated it himself, which prevented it from freezing for the rest of that winter and the next. In January 2022, plaintiff again filed a work request after temperatures plunged, and the water supply pipe once again froze.

In August 2022, plaintiff received a response from defendant's director of operations. In his letter, the director, despite acknowledging defendant "[was] responsible for the space between the unit's sheetrock and the . . . [exterior] wall," asserted defendant had "no legal duty to install insulation in that area and the board decided against voluntarily assum[ing] such a duty." The director also informed plaintiff the board concluded "this was not a common pipe [and] . . . only serviced [plaintiff's] unit."

The water supply line pipe again froze in February 2023, and plaintiff once more contacted defendant to address the issue. A September 2023 letter informed plaintiff that defendant's lawyer had determined "the cause of [plaintiff's] line freezing in [his] lower bathroom is isolated to [his] unit only." Defendant also stated as the pipe "is not considered a common element, . . . it is

3

[plaintiff's] responsibility to repair." Defendant further explained "[i]f the [board were] to move forward with [plaintiff's] request . . ., [it] would be setting a precedent for other homeowners to come forward with the expectations [for] the same treatment."

Plaintiff continued to ask defendant to investigate and address the issue. In this regard, he forwarded a "[r]elease of [i]ndemnity" informing defendant he planned to proceed with repairs on October 16, 2023, that would "consist of the removal of the interior drywall behind the commode and a section of side wall." He also explained the "plumbing supply line to the commode [would] be shortened . . . [and] R[-]15 insulation [would] be installed." Plaintiff further informed defendant he "retained all rights to recover the cost of the repairs . . . either through direct payment or through the . . . [c]ourt system." Defendant never responded, and plaintiff accordingly proceeded with the repairs, which cost $1,600.

Plaintiff thereafter filed a small claims complaint demanding $2,109.87 in damages, plus costs, and alleged his claim was based on a "contract" with defendant. The amount requested represented the costs of the plumber and the additional expenses plaintiff incurred to insulate the water supply line pipe himself beginning in the winter of 2020.

A-2687-23

Plaintiff specifically alleged he had "been ignored by the [b]oard . . . for [four] years." Plaintiff then proceeded to give a timeline of his complaints, beginning with the February 2019 request. As the matter proceeded in small claims court, defendant opted not to file an answer.

The judge held a one-day bench trial in which plaintiff and Jackie Thormador, Branch President of Associa Community Management of New Jersey (Associa) testified. According to Thormador, Associa acts as the "managing agent" for defendant and is responsible for overseeing the "day-to-day operations" including repairing common elements.

Plaintiff acknowledged "[the pipe] under normal circumstances . . . [would] be [his] responsibility to repair." He testified, based on his experience on the board for five-and-a-half years, "the [b]oard [would have] gone in and made repairs to . . . unit[s]" including damaged sheetrock from a faulty common element like a roof leak. Plaintiff provided exhibits and documentary evidence including his work orders for maintenance on the frozen water supply line pipe, his lawyer's demand letter, copies of defendant's response to his demand letter, photographs of the pipe and his efforts to solve the issue, the invoice reflecting the plumber's repair, and photographs of online weather trends and his

5

thermostat showing the frigid weather on the days he recounted the pipe freezing.

Plaintiff acknowledged the master deed specified "no owner shall make any structural modifications, or alterations, within a dwelling unit, without any written consent of [defendant]." Plaintiff stated in repairing the pipe, "the only . . . change was . . . the insulation was added to any area that had no insulation prior." He asserted "when [his] contractor pulled the sheetrock down, there was no additional insulation" in the area of the water supply line pipe.

Plaintiff acknowledged section one of the condominium bylaws requires "[e]ach member . . . [to] perform properly, and at his own risk, cost and expense, all maintenance or repair work, with respect to the portion of each unit, owned by that member, which does not comprise a part of the common elements" and section nine states, in part, "a member shall not make structural modifications or alterations, in its unit, or installations, located therein, without the written consent of [defendant]." Plaintiff also testified the plumber's invoice did not break down the cost of the repairs.

Thormador explained her understanding of the master deed and bylaws and stated, based upon her experience, the water supply line pipe "would be considered as part of the unit, and not a common element." She alleged

6

defendant attempted to inspect the water supply line before plaintiff went forward with the repair "to . . . make a determination . . . whether or not a common element was causing his issue." She also confirmed she had previously been in plaintiff's unit when plaintiff highlighted the pipe "to show [her] what the problem was." Finally, Thormador acknowledged that if a roof leak caused damage to the interior of a unit, defendant would have likely reimbursed the unit owner for those repairs.

After considering the testimony of the parties and the documentary evidence, the judge entered judgment for plaintiff in the amount of $1,642, approximately $500 less than his requested damages, and explained its decision in an oral opinion. The judge rejected defendant's contention that the invoice was insufficient to prove plaintiff's damages claim because it did not itemize the different costs associated with the repairs. The judge explained it would not expect "for a relatively small job, [a] plumber[] . . . [to] not break out time and materials." The judge found the $1,600 cost was "for a job of this nature . . . [not] out of the range of things."

As to defendant's responsibility for the repairs, the judge noted both parties agreed that defendant was only required to repair common elements. The judge then found "plaintiff, . . . an engineer, testified accurately that the problem

A-2687-23

with his pipe[] was . . . caused by . . . the cold. [T]he fact that [plaintiff] was able to solve the problem by heating up the wall with a hairdryer, . . . indicate[s] . . . that the problem was that the pipe was frozen."

The judge found defendant breached its duty to provide sufficient insulation and explained that "if there's a problem with insulation . . . in the . . . wall, . . . that's a common element, and [defendant] need[ed] to deal with it." Finally, the judge found plaintiff was required to shorten the water supply line pipe because it was freezing from cold weather, a fact that did not require expert testimony as it was "knowable to anybody with a high school knowledge of . . . physics."

As noted, the judge entered judgment in favor of plaintiff for $1,600, plus $42 in court costs and rejected his request for the additional costs incurred related to his attempt to insulate the water supply line pipe himself.

Before us, defendant argues:

> I. THE TRIAL COURT COMMITTED LEGAL ERROR IN CONCLUDING THAT THE ASSOCIATION WAS RESPONSIBLE FOR MAINTENANCE AND REPAIR OF PLAINTIFF'S SHEETROCK AND WATER PIPE, AS SAME ARE COMPONENTS OF THE UNIT, WHICH PLAINTIFF MUST MAINTAIN AND REPAIR, AND PLAINTIFF FAILED TO DEMONSTRATE THAT NEGLIGENCE ON THE PART OF THE ASSOCIATION IN

MAINTAINING THE COMMON ELEMENT NECESSITATED SUCH REPAIRS.

A. AS A MATTER OF LAW, AND UNDISPUTED AT TRIAL, PLAINTIFF – AND NOT THE ASSOCIATION – IS RESPONSIBLE FOR MAINTENANCE AND REPAIR OF THE WATER PIPE AND SHEETROCK, WHICH ARE PART OF THE UNIT, RATHER THAN THE COMMON ELEMENT.

B. PLAINTIFF FAILED TO ESTABLISH ANY NEGLIGENCE ON THE PART OF THE ASSOCIATION WARRANTING AN AWARD OF DAMAGES IN CONNECTION WITH THIS MATTER.

II. THE TRIAL COURT COMMITTED LEGAL ERROR IN HOLDING THE ASSOCIATION RESPONSIBLE FOR THE COSTS OF COMMON ELEMENT MODIFICATIONS IMPROPERLY MADE BY PLAINTIFF – A DECISION THAT CANNOT STAND AS A MATTER OF PUBLIC POLICY.

III. THE TRIAL COURT ERRED IN DETERMINING THE QUANTUM OF DAMAGES BY AWARDING PLAINTIFF THE ENTIRE AMOUNT SET FORTH IN AN UNITEMIZED INVOICE, WHICH INCLUDED WORK PERFORMED ON COMPONENTS OF THE UNIT THAT PLAINTIFF WAS RESPONSIBLE TO MAINTAIN.

IV. PLAINTIFF'S TESTIMONY THAT THE ASSOCIATION WOULD HAVE REPAIRED HIS SHEETROCK IF THE MATTER INVOLVED A ROOF LEAK WAS IRRELEVANT, SPECULATIVE AND SHOULD NOT HAVE BEEN PERMITTED.

A-2687-23

V. THE TRIAL COURT ERRED BY IMPROPERLY RELYING UPON THE PERSONAL EXPERIENCE OF THE TRIAL JUDGE IN DETERMINING THE CAUSE OF THE FREEZING PIPES AND THE REMEDIAL MEASURES REQUIRED, ABSENT ANY EXPERT EVIDENCE SUPPORTING ITS DECISION.

We disagree with all of defendant's arguments as we are satisfied that the judgment is based on adequate, substantial, credible evidence in the record. We provide the following comments to amplify our decision.

Our review of a judge's factual findings following a bench trial is limited and well established. See Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). Our task is not to determine whether an alternative version of the facts has support in the record, but rather, whether "there is substantial evidence in support of the trial judge's findings and conclusions." Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (citing Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351, 357 (App. Div. 1961)). Accordingly, we will "not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." In re Trust Created By Agreement Dated Dec. 20, 1961, ex

A-2687-23

rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, 65 N.J. at 484).

Further, "'[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (alteration in original) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).  We defer to the trial court's "feel of the case" because it has the "opportunity to see and hear the witnesses."  N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (citing Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)).  However, we conduct a de novo review of the trial court's interpretation of legal issues.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In addition to the aforementioned standard of review principles, we are mindful that in matters before the Small Claims Section of the Special Civil Part that "the rules of evidence may be relaxed 'to admit relevant and trustworthy evidence in the interest of justice' in actions . . . ."  Penbara v. Straczynski, 347 N.J. Super. 155 (App. Div. 2002) (quoting N.J.R.E. 101(a)(3)(A)).  With that said, "even considering the character of that forum, we think it plain that critical

facts must be proved and not merely assumed."  Triffin v. Quality Urb. Hous. Partners, 352 N.J. Super. 538, 543 (App. Div. 2002).

The rights and responsibilities of a condominium-unit owner and a governing association are controlled by the master deed, the bylaws, and the New Jersey Condominium Act (NJCA), N.J.S.A. 46:8B-1 to -38.  Cape May Harbor Vill. & Yacht Club Ass'n v. Sbraga, 421 N.J. Super. 56, 70 (App. Div. 2011).  The NJCA requires the master deed to include certain provisions, including "[a] description of the common elements and limited common elements," and allows the master deed to contain other provisions related to "the use, occupancy, . . . or other disposition" of units as long as the provisions are not inconsistent with the NJCA.  N.J.S.A. 46:8B-9(f), (m).

Pursuant to the NJCA, a condominium association is responsible for "[t]he maintenance, repair, replacement, cleaning[,] and sanitation of the common elements."  N.J.S.A. 46:8B-14(a); see also Lechler v. 303 Sunset Ave. Condo. Ass'n, 452 N.J. Super. 574, 585 (App. Div. 2017); Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 171 (App. Div. 2002).  The NJCA defines common elements to include "the foundations, structural and bearing parts, supports, main walls, roofs, basements, halls, corridors, lobbies, stairways, elevators, entrances, exits and other means of access, excluding any

specifically reserved or limited to a particular unit or group of units," "all apparatus and installations existing or intended for common use," and "such other elements and facilities as are designated in the master deed as common elements." N.J.S.A. 46:8B-3(d)(ii), (vi), (viii). "The inclusion within common elements in subparagraph '(ii)' of the 'main walls' and 'roofs' implies that material further to the interior of a unit would be part of the unit." Soc'y Hill Condo. Ass'n, 347 N.J. Super. at 170.

"[T]he thrust of this section of the [NJCA] is to define common elements in general as those elements existing or intended for common use." Ibid. The NJCA further provides "[n]o unit owner shall contract for or perform any maintenance, repair, replacement, removal, alteration or modification of the common elements or any additions thereto, except through the association and its officers." N.J.S.A. 46:8B-18.

We reject the arguments raised by defendant in Point I, A-B. The primary issue in this appeal is not the distinction between what property is part of plaintiff's unit, and what constitutes a common element. On that issue the parties agree, and the governing documents introduced at trial are consistent with the NJCA. Instead, the triable issue of fact before the highly experienced Special Civil Part judge was whether defendant should be held responsible for damages

13

related to deficiencies in the common elements, and if the trial proofs supported the judge's liability and damages award.

In Siller v. Hartz Mountain Assocs., our Supreme Court held a unit owner may sue an association "to safeguard his interests in the unit he owns." 93 N.J. 370, 382 (1983). The court recognized defects in common elements "may also result in injury to the unit owner and damage[] to his personal property and the unit." Ibid. In such cases where a unit is damaged, "[t]he unit owner's right to maintain an action for compensation for that loss against the wrongdoer is not extinguished or abridged . . . ." Ibid.

Here, plaintiff testified defendant's failure to properly insulate the interior wall of his bathroom, an undisputed common element, caused all his damages. The judge relied on plaintiff's testimony, and the associated invoice, and accordingly awarded plaintiff only the expenses related to the installation of insulation, necessary removal and replacement of sheetrock to access the uninsulated portion of the wall, and related costs to repair the repeatedly freezing pipe. The judgment is also supported by plaintiff's testimony that he observed the lack of insulation in the wall, the repeated freezing of the interior pipe, the lack of response by defendant's representatives, and his ability to resolve the issue by heating the area.

14

We also reject defendant's contention that the judge "committed legal error" by concluding defendant "somehow breached a legal duty in the absence of any expert evidence . . . ." Defendant maintains the court correctly determined defendant was not negligent and, as such, "there are a multitude of possibilities for pipes freezing, including but not limited to improper placement of the pipe, inadequate heating within the unit and defects with the pipe itself." We disagree.

Generally, "[w]hen the proofs involve a defect in a complex instrumentality, an expert is frequently required to assist the [factfinder] in understanding the mechanical intricacies and weighing competing theories of causation." Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 236 (App. Div. 2012) (citations omitted). The common knowledge doctrine, however, is an exception to this rule. Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394-95 (2001). The exception applies only in the rare case where "the carelessness of the defendant is readily apparent to anyone of average intelligence . . . ." Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325 (1985). In such cases, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407

(2014) (alterations in original) (citing Sanzari v. Rosenfield, 34 N.J. 128, 134 (1961)).

We initially note that the court's judgment was based on a breach of the governing documents, not negligence. Under the circumstances, and based on the evidence presented, we are satisfied expert testimony was not required to establish the need for the plumber's repairs to prevent the pipe from freezing, because, as the court cogently noted based on the evidence presented, that fact was "knowable to anybody with a high school knowledge of . . . physics." Indeed, considering plaintiff's testimony and the documentary evidence an expert was not required to testify as to the cause of the frozen pipe.

In Point II, defendant raises an argument not raised below. Before us, defendant notes under the NJCA, "[n]o unit owner shall contract for or perform any maintenance, repair, replacement, removal, alteration[,] or modification of the common elements or any additions thereto, except through the association and its officers." (quoting N.J.S.A. 46:8B-19). It further argues the NJCA does not contain any exception to this prohibition because "[a]llowing [u]nit [o]wners to make modifications could result in piecemeal modifications of poor quality" and "arbitrarily burdening condominium associations with the costs of unauthorized common element and [u]nit repairs, which are unambiguously a

16

[u]nit [o]wner responsibility, as the trial court did in this matter, creates a tremendous risk to the operations and fiscal health of the community."

We typically decline to address "questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).  As neither exception applies, we could simply decline to address the issue and dismiss defendant's argument on that basis alone.  For purposes of completeness, we nevertheless consider the argument on the merits and reject it.

As noted, the NJCA specifically prohibits unit owners from repairing or altering common elements.  N.J.S.A. 46:8B-18.  Accordingly, unit owners "generally lack standing to sue for damages to the common elements."  Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 72 (App. Div. 2013); see also Siller, 93 N.J. at 377, 381-82; Soc'y Hill Condo. Ass'n, 347 N.J. Super. at 169.

We have previously held, however, "modifications of common elements and limited common elements having no substantial impact on the condominium property as a whole or on the rights and expectations of all other unit owners are

not subject to association prohibition." Billig v. Buckingham Towers Condo. Ass'n I, Inc., 287 N.J. Super. 551, 563 (App. Div. 1996). There is nothing in the NJCA or the common law supporting defendant's contention public policy precludes unit owners in all circumstances from conducting their own repairs of common elements and subsequently seeking reimbursement from the association, particularly when, as here, for significant periods, defendant ignored plaintiff's requests and ultimately refused to remedy the situation.

As the trial record amply supports, plaintiff informed defendant about the freezing water pipe in his unit and defendant failed to inspect properly to ascertain whether an issue with a common element was causing the issue. As the evidence fully supported the conclusion that a lack of insulation caused the pipe to freeze, we are convinced it would be unreasonable to prohibit a unit owner from remedying the issue on their own in light of an association's failure to perform its obligation to repair and maintain common elements. In such a situation, public policy actually favors permitting a unit owner to seek reimbursement.

We also reject defendant's argument in Point III in which it contends the judge erred in awarding plaintiff $1,600 based solely upon the plumber's invoice. Because defendant is only responsible for repairs to common elements,

it maintains "[w]ithout a detailed invoice or testimony regarding the costs attributable to owner responsibility versus [a]ssociation responsibility, a proper determination of damages is not possible."

A party asserting claims has the burden of proof to establish all elements of its causes of action, including damages. Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 503 (App. Div. 2003). Though a party may not be tasked with proving its damages with exact precision, a party remains tasked with proving its damages with, at a minimum, "such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987) (citation omitted). However, "the 'law abhors damages based on mere speculation.'" Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell v. Haynes, 136 N.J. 422, 442 (1994)).

Applying our deferential standard of review and against these legal principles, we are convinced the judge did not err in awarding plaintiff $1,600 in damages. Contrary to defendant's assertion that without a specific breakdown of costs the invoice was insufficient to establish his damages, as noted above, it is well established that a plaintiff need not prove their damages with exact

19

precision. Rather, a plaintiff can satisfy their burden so long as they prove their damages with sufficient certainty to permit the factfinder to "make a fair and reasonable estimate." Lane, 216 N.J. Super. at 420 (citation omitted).

Here, plaintiff provided the judge with an invoice reflecting the total cost of the repair and provided detailed testimony regarding the cause of the freezing pipe and the work completed by the plumber. Defendant did not challenge the veracity of the invoice, nor did it offer any substantive proofs challenging the reasonableness of the costs or the itemization of the work performed. The judge clearly credited plaintiff's testimony and was satisfied, based on its experience and the trial proofs, the costs were all related to remedying the lack of insulation. The invoice, in combination with plaintiff's testimony, fully supported the reasonableness of the costs incurred for the plumber's: 1) home visit, 2) removal and replacement of sheetrock, 3) purchase and installation of insulation, and 4) addressing issues with the supply line.

We have considered defendant's remaining arguments detailed in Points IV and V and deem them of insufficient merit to warrant extended discussion in a written opinion and add only the following brief comments. See R. 2:11-3(e)(1)(E). While it would have been better practice for the judge not to have discussed his personal experiences with plumbing repairs, we are satisfied the

judge's isolated comment does not warrant reversal. As noted, there was sufficient evidence in the record based on plaintiff's testimony and the documentary evidence to support both defendant's liability and the reasonableness and causal connection between the repair costs and the lack of insulation in the interior wall.

Similarly, defendant's challenge to plaintiff's comments regarding his experience as a board member with respect to a prior claim certainly do not warrant reversal. The decision to admit or preclude evidence is well within the judge's discretion. See E&H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 27 (App. Div. 2018) (citing Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)). How defendant addressed a previous matter concerning unit repairs occasioned by damage to a common element certainly was relevant, and the judge's consideration of that brief statement from plaintiff was not an abuse of his considerable discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

21