■ RUDOLF JAKLITSCH et al., Respondents, v MICHAEL FINNERTY, Doing Business as FINNERTY HOME BUILDERS, Appellant, et al., Defendant. — Appeal from a judgment of the Supreme Court in favor of plaintiffs, entered February 8, 1982 in Delaware County, upon a verdict rendered at Trial Term (Harlem, J.). Plaintiffs are husband and wife and reside on Long Island, New York. They purchased unimproved real property in the Town of Hancock, Delaware County, in February of 1976 and, in August of 1977, contracted with Michael Finnerty for the construction of a log cabin on their Hancock property to be used as a vacation home. Finnerty, after subcontracting the electrical work to Hank Raymond, completed the building and plaintiffs commenced occupancy in the summer of 1978. In April of 1979, while plaintiffs were on Long Island, the house was destroyed by fire. Plaintiffs commenced this action in May of 1979 against Finnerty, the contractor, and Raymond, the electrical subcontractor, alleging negligence, breach of contract and breach of implied contract in the construction of the house and installation of the electrical wiring. Plaintiffs also commenced a separate action against Edward Cantrell alleging that he intentionally started the fire. The actions were joined and tried together. After trial, the jury returned a verdict wherein it exonerated defendants Cantrell and Raymond and awarded plaintiffs $65,000 in compensatory damages against defendant Finnerty. This appeal by Finnerty ensued. Other than Finnerty's claim that the jury's compensatory award of $65,000 was based on an erroneous theory of law submitted to the jury by the trial court in its charge, his principal assignment of error is that plaintiffs failed to sustain their burden of proving the cause of the fire by qualified expert evidence. Where, as here, both arson and electrical malfunction are alleged to be alternative causes of the fire that destroyed plaintiffs' building, expert testimony and the opinions derivative therefrom are necessary if plaintiffs are to establish the true cause of fire. In furtherance of meeting that burden plaintiffs called as witnesses Glen Keesler, chief of the voluntary fire company

which fought the blaze, Gary Larsen, a New York State Police B.C.I. investigator, and Harold Kille, a sergeant of the New York City Board of Water Supply and the assistant fire co-ordinator for Delaware County. Chief Keesler, who had been chief of the fire department for nine years at the time of the fire and had fought over 100 fires involving buildings, testified that it was normal practice for him, as chief, to make a written report of his findings concerning the origin of the fire to the Office of Fire Prevention and Control in Albany. He further testified that on the day following the fire he, together with Investigator Larsen and Sergeant Kille, inspected the premises. Each made an independent inspection which revealed no evidence that the fire was incendiary in nature and which indicated that the house had been properly wired. However, each found evidence in the same location within the structure that the occurrence of an electrical malfunction caused the blaze. Chief Keesler observed an electrical junction box in which the electrical wires were melted and he also observed a hole burned from the inside to the outside of the house where the box was situated. Investigator Larsen, a member of the New York State Police for 11 years at the time of his investigation who had been trained in fire investigation while at the State Police Academy, testified that he observed three strands of copper electric wire running vertically along a beam which were separated by a nail. Further, Larsen stated that the separate wires ran to the junction box just below the burn from the inside to the outside of the house. These observations by Investigator Larsen caused him to close his arson investigation as "unfounded" and to conclude that the cause of the fire was an electrical malfunction. Sergeant Kille, at the time of his investigation, had 35 years experience as a fire fighter, eight of which he had served as a fire co-ordinator. He testified that he saw the electrical wiring with the nail protruding and that the wires in the junction box were welded, a condition that he stated could not have been caused by heat but only by an electrical charge. Kille reinforced this conclusion by stating that the wiring between the point where the nail was separating the three copper wires and the junction box was "beaded", a condition which he also attributed to an "electrical charge or arc". He further testified that there was no evidence of welding or beading in any other part of the electrical wiring throughout the house. In sum, the cumulative testimony of Keesler, Larsen and Kille was to the effect that a foreign object in the nature of a nail had been driven between three vertical strands of copper wire in the area of an electrical junction box and thereby caused an electrical charge or arc to pass through the wiring. Their conclusion was that this situation resulted in the melting of the wires in and around the junction box and that a hole was burned in the adjacent wall which led to the building's ultimate destruction. Since much of the testimony was received without objection, we reject defendant Finnerty's contention that plaintiffs failed to sustain their burden of proving the cause of the fire by competent expert proof. Further, while defendant Finnerty did object to the receipt into evidence of plaintiffs' exhibit in the form of Chief Keesler's written report to the Office of Fire Prevention and Control, that report was nothing more than a compilation of the opinions orally expressed by plaintiffs' experts and, accordingly, was properly received into evidence. Turning to plaintiffs' proof of damages for destroyed real property, loss of personal property and apportionment of such damages by the jury, we conclude that the general verdict herein covering both losses was proper. In New York, a party claiming relief for injury to real property need establish the amount of damage under only one of many acceptable measures. If the alternative measures would yield a lesser award, the burden of proving that is upon defendant (*Jenkins v Etlinger*, 55 NY2d 35). Here, plaintiffs established a total loss of their building and a replacement cost of $50,000. Defendant Finnerty failed to offer any evidence that the measure of

diminution in market value of the realty was less than the amount of loss established by plaintiffs. While defendant Finnerty's contention that the proper measure of damages for articles with a fair market value is the difference between their before and after values, taking into consideration original costs, age, use, depreciation and deterioration, is correct, we hold that where, as here, recovery is sought for only major appliances and furniture, all practically brand new and literally unused, plaintiffs' proof of the purchase price of each item and date of purchase was sufficient to sustain their burden of proof since the purchase price could reasonably be equated to the present market value of the personal property lost. Since there were no exceptions by defendant Finnerty to the trial court's charge and no request for a special verdict with respect to damages, the general verdict in the sum of $65,000 does not lend itself to definitive arithmetical analysis. We can, however, conclude that the jury credited plaintiffs' expert proof that the cost of reproducing the house at the time of trial was $50,000 and the cost of lost personalty was $8,417. Further, there was proof of other costs such as clean up, discontinuance of electrical services and miscellaneous other matters which, under the court's instruction, the jury was free to consider. In view of defendant Finnerty's lack of exceptions and requests, we do not feel that the jury's verdict should be disturbed. Judgment affirmed, with costs. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.