216 N.J. Super. 413 (1987)
524 A.2d 405
I. WILLIAM LANE AND BETTY G. LANE, PLAINTIFFS-RESPONDENTS,
v.
OIL DELIVERY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 13, 1986.
Decided January 22, 1987.
*415 Before Judges KING, HAVEY and MUIR, Jr.
Wolff, Helies & Duggan, attorneys for appellant (John Peter Duggan on the brief).
Kraft & Hughes, attorneys for respondents (Mark F. Hughes, Jr., on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
Defendant appeals and plaintiffs cross appeal from a judgment entered on a jury verdict in favor of plaintiffs which was subsequently molded and corrected by the trial court into a $278,677.20 judgment with interest from September 25, 1983.
On August 10, 1983, plaintiffs, William and Betty Lane, and the American National Fire Insurance Company filed a complaint against defendant, Oil Delivery, Inc. The complaint and its later amendment sought damages for losses incurred by the *416 Lanes in a fire at their home and for the subrogated claim of American for monies paid to the Lanes under a policy of insurance.
The complaint alleged negligence, breach of contract and strict liability in tort as grounds for liability. Defendants answered and asserted a separate defense of negligence on the part of the Lanes.
The jury, finding negligence of both parties as proximate causes of the fire and damage sustained, determined defendant to be 60% negligent and the Lanes to be 40% negligent. It assessed total damages sustained by the plaintiffs at $425,985.
The trial judge denied motions by the defendant for a new trial or remittitur. He further denied plaintiffs' motion for a new trial, judgment notwithstanding the verdict and additur. However, he granted plaintiffs' motion for correction of mathematical error by the jury, adding $38,477 to the amount of the judgment. The court, relying on R. 4:42-11(b), then awarded interest from September 25, 1983, a date six months after the fire.
On appeal, defendant contends:
I. FINDING DEFENDANT SIXTY PERCENT NEGLIGENT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
II. WHERE AMOUNT OF VERDICT IS SO DISPROPORTIONATE WITH PROOFS AS TO DEMONSTRATE MISTAKE, THE CASE MUST BE REMANDED.
III. TRIAL COURT IMPROPERLY ALLOWED PLAINTIFFS TO RENDER TESTIMONY ON ITEMS OF PERSONALTY.
Plaintiffs, on cross appeal, contend that:
I. THE REPAIRMEN SAW NO RISK IN STORING LOGS NEAR AN OIL BURNER, SO A JURY SHOULD NOT FIND A HOMEOWNER NEGLIGENT ON THAT BASIS.
II. SERVICEMEN ARE STRICTLY LIABLE IN TORT, SO THE JURY SHOULD HAVE BEEN INSTRUCTED ON ITS HIGHER STANDARDS OF CONTRIBUTORY NEGLIGENCE.
III. CONTRIBUTORY NEGLIGENCE SHOULD USE THE SAME STANDARDS IN NEGLIGENCE ACTIONS AND IN STRICT LIABILITY ACTIONS.
IV. INSURERS HAVE THE RIGHT TO SUE AND THE JURY SHOULD KNOW THAT PART OF ITS VERDICT WILL GO TO THE INSURER.

*417 V. INTEREST SHOULD RUN FROM THE DATE OF THE FIRE.
VI. OWNERS OF PERSONAL PROPERTY ARE COMPETENT TO TESTIFY AS TO THE VALUE OF THAT PROPERTY.
VII. REPLACEMENT COST IS THE PROPER VALUE FOR DAMAGED PROPERTY.
VIII. THE TRIAL JUDGE PROPERLY CORRECTED HIS ERROR IN SUPPLYING A SUM TO THE JURY AND IN CORRECTING THE VERDICT.
IX. IN THE EVENT OF A RETRIAL, THESE RULINGS SHOULD BE MADE:
A. OWNERS ARE ENTITLED TO DAMAGES FOR THEIR TIME IN BUYING REPLACEMENTS OF THEIR BURNED PERSONAL PROPERTY, FOR LOSS OF USE AND QUALITY OF LIVING AND FRIGHT.
B. THE BOCA CODE CONTROLLED MAINTENANCE, SO IT SHOULD GO INTO EVIDENCE.
C. THE DECORATOR'S TESTIMONY AS TO VALUE WAS ADMISSIBLE.
[We have deleted those portions of our opinion related to issues other than claims regarding nature of proof and measure of damages for personalty losses sustained by the plaintiffs Lanes.]

III.
We now turn to the defendant's challenge to the damage award by the jury which resulted in the molded, corrected judgment amount of $278,677.20.
The jury set the Lanes' damages at $425,985. This figure represented the total losses claimed for house reconstruction, living expenses during reconstruction, loss of jewelry and personalty replacement costs. The Lanes set out the personalty replacement costs in a 31-page list. Prior to their testimony on the value of the personalty, the trial judge ruled the measure of damages should be the market value at the time of the fire.
The value of personalty the jury accepted came from a total of the figures on the 31-page list. On that list, the Lanes set forth each item of personalty and their estimated value or the actual cost of the item. In their testimony, they did not state how they arrived at the value for each item. Instead, they selected an apparent cross section of the items.
As to the value of items specifically covered, Mr. Lane set the value based on his experience in buying the articles in the past, *418 pricing them at stores or in newspaper ads. Mrs. Lane, who testified essentially on her clothing and furniture in the house, based her opinion on her experience as the owner of a retail clothing store and as supervisor of charity flea markets.
The list did not distinguish actual cost from estimated cost. Instead, it listed figures under the heading "approximate cost."
The judge, in his charge to the jury, stated:
Basically what we are taking as the value is that which existed as of the date of the fire. Now, this may require some effort on your part but I think that as intelligent people you can do this. You are going to have the purchase price, you will have some indication of when the item was purchased or some cases received as a gift. You should be able using common sense to make a determination as to whether that [sic] items depreciated in value or appreciated in value between the time of the acquisition and the time of the fire. If it is an item which was salvageable and has been repaired you can consider the cost of the repairs as the damage sum available arriving from that item. Again, I'm speaking not of speculation, but of those claims which have been proved by a preponderance of the evidence. And I would add that in speaking to you about damages and how to calculate them, I'm not suggesting to you that necessarily you should find that the situation requires you to award damages. If you should, I have tried to give you an idea of how it is that you should calculate those figures.
During the course of deliberations, the jury sought the totals on the 31-page list. The judge told the jury totals could be provided. The jury then asked, "Are we to add all moneys and if agreed, that would be item three on questions."[1]
The trial judge sent the following note in response:
The "original cost" column totals $209,615.[2]
The "repair cost" column totals $38,477.
Those two columns together total $248,092.
The judge gave no instruction regarding the use of the note.
All parties agree the jury added the $209,615 for personalty to the $216,370 total of the other three items to arrive at their *419 verdict. The judge, on plaintiffs' motion, added the omitted $38,477 in repair costs to arrive at the judgment figure.
Defendant now contends the jury charge on measure of damage so conflicted with the note from the judge on "original costs" that the damage verdict exceeded the proofs at trial. It further argues the trial judge erred in allowing the Lanes to testify as to their valuations of personalty.
The measure of damages for personalty destroyed by a tortfeasor, when there is a market value, is the market value at the time of the loss. Assoc. Metals, etc., Corp. v. Dixon Chem. & Res., Inc., 68 N.J. Super. 305, 314 (Ch.Div. 1961), vacated in part, 82 N.J. Super. 281 (App.Div. 1964), on remand, 83 N.J. Super. 263 (Ch.Div. 1964), certif. den., 42 N.J. 501 (1964).
When, however, the personalty is household furnishings and wearing apparel and the like, where the market value cannot be ascertained, the better measure of damages and the one we find applicable in this case, is the actual or intrinsic value of the property to the owner, excluding sentimental or fanciful value. Holmes v. Freeman, 1 Conn. Cir. Ct. 336, 185 A.2d 88, 91 (Conn. Cir. Ct.App.Div. 1962); Mullen v. Sinclair Refining Company, 32 A.D.2d 1000, 301 N.Y.S.2d 716, 718 (1969), reargument granted sub. nom., Mullen v. Jacobs, 25 N.Y.2d 735, 255 N.E.2d 569, 307 N.Y.S.2d 1029 (1969); DeSpirito v. Bristol County Water Company, 102 R.I. 50, 227 A.2d 782 (1967); see also King v. United States, 292 F. Supp. 767 (D.Colo. 1968) (market value does not apply to every fact situation).
The rationale for such a rule is consonant with the goal of tort damages to fully compensate the injured party, thereby making it possible to replace the lost property with a comparable substitute. 4 Damages in Tort Actions (MB) § 37.22. The market value of wearing apparel and household furnishings cannot compensate the owner for their loss. While there may be a second-hand market value, other items of equal value are not interchangeable. As noted in 4 Damages in Tort Actions (MB) § 37.22[a]:

*420 The average owner will not replace lost clothing or furniture with second-hand merchandise, but will instead be "forced" to purchase new substitutes. Consequently, the second hand price does not provide adequate compensation for the loss sustained.
That is not to say the plaintiff is entitled to full replacement cost. Mullen v. Sinclair Refining Company, 301 N.Y.S.2d at 718. While the element of original cost is relevant, depreciation, age, wear and tear, condition, cost of replacement and cost of repair are all factors to be considered in assessing the damage sustained. Id.; Saporiti v. Austin A. Chambers Co., 134 Conn. 476, 58 A.2d 387, 388 (1948).
Where an item is brand new, proof of original cost sustains the owner's burden of proof as to value. Jaklitsch v. Finnerty, 96 A.D.2d 690, 466 N.Y.S.2d 774 (3rd Dept. 1983). Further, while the cost of repair may be the sole proof of damages, depreciation of a repaired object, adequately established, may be an additional relevant factor. Fanfarillo v. East End Motor Co., 172 N.J. Super. 309, 313 (App.Div. 1980).
Proof of damages need not be done with exactitude, particularly when dealing with household furnishings and wearing apparel. It is therefore sufficient that the plaintiff prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate. Holmes v. Freeman, 185 A.2d at 91.
In providing such evidence, the plaintiff, as owner, may give an opinion of worth although he or she is without expert knowledge. Vaughan v. Spurgeon, 308 A.2d 236, 237 (D.C. 1973); see also Nixon v. Lawhon, 32 N.J. Super. 351, 356 (App.Div. 1954). The basis for arriving at the opinion must, however, not be a matter of speculation and the witness must be required to establish the grounds for any opinion given. It is for the jury, with appropriate instructions from the court, to ascertain the probative value of the opinion. We do not find Evid.R. 19 to be to the contrary.
*421 The trial judge's jury instructions and subsequent conduct relating to the totals set forth on the 31-page list of personalty fell short of an appropriate legal standard for the jury to properly assess tort damages.
We conclude, therefore, that the matter must be remanded to the trial court for a new trial on the issue of damages for personal property destroyed in the fire. A new trial on all issues of damages, as suggested by defendant, is unjustified in light of the fact that defendant raises no issues respecting the damages due for costs of reconstruction, living costs and jewelry lost in the fire, and the fact that the jury method of arriving at that damage award was clearly mechanical and undisputed.

IV.
Plaintiffs' contentions regarding the decorator's testimony may be dealt with by the trial judge on the retrial. Their remaining contentions we find clearly without merit. R. 2:11-3(e)(1)(E).
Judgment affirmed in all aspects except the jury damage award for personal property which is reversed and remanded for retrial in accordance herewith.
NOTES
[1] The word "questions" referred to jury interrogatories.
[2] We note here a confusion as to the meaning of the figures in the 31-page list. The figures, according to the Lanes' testimony, represented estimated costs or, in some instances, actual costs. The trial judge referred to these figures as "original costs."