NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0556-15T3

CANON FINANCIAL SERVICES,
INC.,

    Plaintiff-Respondent,

v.

LINWOOD CITY BOARD OF
EDUCATION,

    Defendant-Appellant,

and

QUALITY FIRST, INC.,

    Defendant,

and

LINWOOD CITY BOARD OF
EDUCATION,

    Defendant/Third-Party
    Plaintiff,

v.

DOUGLAS GREEN, JR. and
DOUGLAS GREEN, SR.,

    Third-Party Defendants.

_____

Argued April 26, 2017 — Decided June 12, 2017

Before Judges Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Burlington County, Docket No.
L-368-09.

Christopher A. Barrett argued the cause for
appellant (Cooper Levenson, P.A., attorneys;
Mr. Barrett, on the briefs).

Howard N. Sobel argued the cause for
respondents (Law Offices of Howard N. Sobel,
P.A., attorneys; Mr. Sobel, of counsel and on
the brief; Margaret D. Nikolis, on the brief).

PER CURIAM

Linwood City Board of Education (LBOE) appeals from the trial court's order enforcing a settlement between LBOE and Canon Financial Services (CFS). Having reviewed the record in light of applicable legal principles, we affirm.

This appeal is rooted in a dispute over the lease of copiers. On November 3, 2006, LBOE and CFS entered into a lease (Lease) for the provision of seven articulated copiers. Quality First (QF), an entity that had done business with the LBOE for many years, was to supply the copiers. Four days prior to the finalization of the Lease, LBOE's administrator acknowledged receipt of the copiers by her signature on the Lease's first page. The Lease called for monthly payments of $1938 for the seven copiers.

For twenty-four months, LBOE made timely, monthly payments. In November 2008, LBOE ceased payment claiming that it never

2

received two copiers called for in the Lease from QF.  LBOE also claimed that it ceased payment due to QF's failure to service the copiers.

CFS instituted litigation against LBOE for breach of the Lease.  QF was also named as a defendant for its failure to provide the two copiers LBOE alleged were never received.

LBOE filed an answer with a cross-claim against QF and its two principals, Douglas Green, Sr. and Douglas Green, Jr. (the Greens).  Default judgment was entered in favor of CFS against QF after that entity failed to file a responsive pleading.[1]  Default judgment was entered in favor of LBOE against QF and the Greens, individually, after they failed to file a responsive pleading.  No dollar amount was assigned to the judgment based upon an issue relating to LBOE's proofs on its consumer fraud claim.

At the conclusion of discovery, CFS filed a motion for summary judgment.  Subsequent thereto and prior to the hearing, CFS and the LBOE engaged in settlement discussions.  The discussions resulted in an agreement (Agreement).  The Agreement was approved by resolution of the Board of Education.  Among its terms, the Agreement addressed the copiers:

1. <u>Terms of Settlement</u>

---

[1] CFS paid QF approximately $102,000 after it received confirmation of the delivery of the copiers called for in the Lease.

(a) CFS will provide two (2) refurbished Canon IR7095 photocopiers to LBOE. These photocopiers will be refurbished by Canon Business Solutions (hereinafter "CBS") solely at the cost of CFS. These photocopiers will be incorporated into the Lease Agreement as the substitutes for copiers IR6570, serial number SLP20311 and IR6570 serial number SLP20329, the two copiers which were ordered by the LBOE but never delivered by QF to LBOE[;]

(b) The refurbished Canon IR7095 photocopiers shall be delivered to the LBOE on or before September 15, 2011;

(c) Commencing on October 1, 2011[,] and continuing for thirty-six (36) months (ending September 1, 2014), the LBOE shall pay to CFS the sum of One Thousand Nine Hundred Thirty-Eight Dollars ($1938[]) a month which represents the full, complete monthly stipulated remaining payments due and owing from the LBOE to CFS on Lease Agreement No. 01-317093.01, except otherwise provided for in the Agreement;

(d) After LBOE pays the remaining thirty-six (36) lease payments due to CFS, the LBOE shall have the option to purchase the photocopiers under Lease No. 01-317093.01 and[/]or the substitute copiers provided by QF, at fair market value. In the alternative, with at least sixty (60) days['] notice to CFS, the LBOE shall advise CFS of their intention to return these photocopiers which remain on the premises that are subject of the aforesaid Lease and or were substitute copiers provided by QF. The return of these photocopiers shall be arranged by the LBOE to CFS per the Terms and Conditions of the Lease Agreement[;]

(e) These terms and conditions are made with the understanding that the LBOE is not currently in possession of the photocopiers

4

A-0556-15T3

> that were originally contained under the Lease No. 01-317093.01. However, LBOE recognizes as part of this Lease Agreement it is receiving two substitute copiers from CFS.

The Agreement also called for LBOE to make the remaining payments on the Lease. LBOE made all but the last two payments. After CFS filed a motion to enforce the Agreement, LBOE remitted those payments.

Per the Agreement, CFS also sought the return of the seven copiers subject to the Lease or the substituted copiers provided by QF. In return, CFS acknowledged that it was obligated to provide two replacement copiers. In opposition, LBOE argued that it would return the two copiers for the replacement copiers, but was unable to return the remaining five copiers as it was not in possession of them.

Subsequent to oral argument, the motion judge held that CFS was entitled to enforcement of the Agreement relative to the return of the five copiers or the payment of the fair market value of the copiers. Since LBOE maintained that it was not in possession of the copiers at issue, the judge, relying on a certification from Elaine Monti, a "Senior Legal Specialist" for CFS, ordered LBOE to pay $20,382.88 as the fair market value.

On appeal, LBOE raises the following arguments:

POINT I

5

THE TRIAL COURT ERRED IN IGNORING AND OTHERWISE NOT ADOPTING THE SETTLEMENT AGREEMENT'S PLAIN MEANING AND SUPPLYING ITS OWN INTERPRETATION.

POINT II

ALTERNATIVELY, IF THE SETTLEMENT AGREEMENT IS DEEMED AMBIGUOUS AND NOT SUBJECT TO A PLAIN LANGUAGE CONSTRUCTION, THE TRIAL COURT ERRED BY FAILING TO CONDUCT A PLENARY FACT[-]FINDING HEARING.

We are not persuaded by these arguments.

We briefly state the principles that guide our analysis. "Settlement of litigation ranks high in our public policy." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div.), certif. denied, 35 N.J. 61 (1961)). In furtherance of the strong policy of enforcing settlements, "our courts 'strain to give effect to the terms of a settlement wherever possible.'" Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (citation omitted). Therefore, an agreement to settle a lawsuit will be honored and enforced in the absence of fraud or other compelling circumstances. Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div.), certif. denied, 94 N.J. 600 (1983).

The "[i]nterpretation of a settlement agreement implicates significant legal and policy principles[.]" Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009). When

examining the terms of a settlement agreement, we are guided by the rules of contract construction. Brundage, supra, 195 N.J. at 600-01; see also Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007). "The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 492 (App. Div.), certif. denied, 127 N.J. 548 (1991). In interpreting a contract, the focus is on "the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain[.]" Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 339 (App. Div.) (citation omitted), certif. denied, 188 N.J. 353 (2006). In that regard, the court may not re-write a contract or grant a better deal than that for which the parties expressly bargained. Solondz v. Kornmehl, 317 N.J. Super. 16, 21 (App. Div. 1998). Moreover, "any action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced." Dep't of Pub. Advocate, Div. of Rate Counsel v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985).

Even where the language of a contract is clear on its face, courts may determine its meaning by looking to extrinsic evidence, such as "the situation of the parties, the attendant circumstances, and the objects there were . . . striving to attain." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953). Our courts "permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties." Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 270 (2006). In Sachau v. Sachau, 206 N.J. 1, 5-6 (2011) (quoting Schwimmer, supra, 12 N.J. at 302), the Court stated: "A court's role is to consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'"

In this dispute regarding the interpretation of the Agreement and its enforcement, we find the resolution lies within the language of the Lease, which explicitly referenced seven copiers. The litigation resolved by the Agreement invoked the non-payment by LBOE of the monthly charge for the lease of seven copiers. A matter in dispute relative to the litigation was LBOE's contention that, although it paid for the lease of seven copiers, it only received five copiers. In reaching an accord, CFS agreed to remedy that issue in contest by providing two replacement copiers. The Agreement also provided for an option to purchase the copiers

A-0556-15T3

referred to in the Lease "and/or the substitute copiers provided by QF at fair market value." This language afforded LBOE the option to return the copiers referenced in the Lease or other substituted copiers. As such, the language referencing the lack of possession by LBOE of the copiers from the Lease did not vitiate its obligation to return five copiers.

We are satisfied the judge correctly considered the Agreement as a whole and in the context of the resolution of the matters in dispute between the parties. In the judge's view, it was "inexplicable" that the LBOE paid the full monthly amount assigned by the Lease when it did not receive all seven copiers.

As the judge noted in her decision, no explanation from LBOE was provided for the missing copiers:

> The Board of Education has chosen not to provide me with a certification from anybody that would outline the history of this copier debacle which started nine years ago, almost nine years ago, with signing for seven, getting only two, maybe losing five, the middle of the night swap out of the machines. Nobody has bothered to tell me anything about that. All I know is counsel says my client told me they don't have them, they're not hiding in the schools, and we don't have to pay for them. But there are no inferences that can be drawn from the settlement agreement other than the Board of Education understood they were on the hook for seven copiers and they said they would return them or buy them, and they haven't returned them.

9

We agree. Construing the Agreement in the context of the conditions under which it was entered, we conclude the judge's interpretation of the Agreement was grounded in the law and consistent with the circumstances under which it was drawn.

LBOE also argues that the monetary amount assigned by the judge as fair market value for the unreturned copiers was erroneous. However, similar to the lack of explanation by LBOE for the missing copiers, it offered no proof of value; having clung to its position that there were no copiers to return. The only proof submitted to the judge regarding value was the Monti certification. We find no abuse of discretion in the judge's assessment of the fair market value of the copiers by resort to that certification.

An award of damages must be calculated with reasonable certainty and should not be based upon "mere speculation." Caldwell v. Haynes, 136 N.J. 422, 442 (1994). Precision in such calculations is not essential. The trial record need only provide a sufficient "foundation which will enable the trier of the facts to make a fair and reasonable estimate." Id. at 436 (quoting Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)). Here, the judge's determination of damages was grounded in the sole evidence presented and was not based upon speculation.

A-0556-15T3

Finally, LBOE argues that the judge erred in not granting its motion for reconsideration. Again, we disagree.

We review the trial court's denial of a motion for reconsideration under an abuse of discretion standard. Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997). Reconsideration is "a matter within the sound discretion of the [c]ourt to be exercised in the interest of justice[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Reconsideration is appropriate if "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria, supra, 242 N.J. Super. at 401); see also Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461-62 (App. Div.), certif. denied, 174 N.J. 544 (2002). Reconsideration is not appropriate as a vehicle to bring to the court's attention evidence that was not present, but was available, in connection with initial argument. Fusco, supra, 349 N.J. Super. at 463.

Having considered the record in light of our standard of review and controlling legal principles, we discern no basis for error in the denial of the motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0556-15T3