**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1719-17T1

18 RT. 22 EAST, LLC,

     Plaintiff-Respondent,

v.

ONE STOP AUTO SALES, LLC,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

LOUIS S. AIELLO and FRANCIS
C. KRAUS,

     Third-Party Defendants/Fourth-
     Party Plaintiffs-Respondents,

v.

LEON LEWINSON,

     Fourth-Party Defendant-
     Respondent,

and

ENVIRONMENTAL EVALUATION

GROUP, INC. and PHILIP
I. BRILLIANT,

      Fourth-Party Defendants.
_____

Argued February 11, 2019 – Decided June 24, 2019

Before Judges Haas, Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2842-13.

Wolfgang G. Robinson argued the cause for appellant.

Richard J. Kapner argued the cause for respondent 18 Rt. 22 East, LLC.

PER CURIAM

In this breach arising from the failure to make installment payments for the purchase of a real estate contract, defendant One Stop Auto Sales, LLC, appeals from a bench trial judgment in favor of plaintiff 18 Rt. 22 East, LLC, for damages of $483,775.86, inclusive of attorney's fees. Because the trial judge's factual findings are based upon credible evidence in the record and he correctly applied the law, we affirm substantially for the reasons set forth in his thorough oral decision.

A-1719-17T1

I

We briefly summarize the facts adduced at the one-day bench trial. On March 9, 2010, plaintiff entered into a contract to sell a property – previously operated as a gas station[1] – on Route 22 East in Union County to defendant for $350,000. Nine days after the agreement was entered into, the New Jersey Department of Environmental Protection (DEP) initiated another investigation concerning the possibility of contamination related to a single underground oil tank, which was identified as incident number 10-03-21-2157-38. A previous DEP investigation, related to the need to remove six oil tanks and contaminated soil had been identified as incident number 98-12-09-1139-50.

Francis Kraus, a member of plaintiff, made verbal assurances to defendant that the remediation work related to the DEP investigation should be completed shortly, and that a No Further Action (NFA) letter from the DEP would be issued and provided to defendant. Based on the promises, defendant proceeded with the purchase, subject to an indemnification agreement.

The indemnification agreement specifically acknowledged that "the property . . . contain[ed] contaminated soil" and provided that plaintiff would "do everything in its power . . . in order to obtain" a NFA letter from the DEP.

---

[1] Property had ceased being used as a gas station in 1998.

A-1719-17T1

The agreement also explicitly provided that plaintiff would "indemnify and hold [defendant] harmless for any costs and fees" that defendant "incur[ed] in order to obtain" the NFA letter. If a NFA letter was not obtained within a year, plaintiff would place $25,000 in an escrow account, and, if this sum was "insufficient to cover the costs," Louis S. Aiello – another member – and Kraus, in their personal capacities, would "agree to indemnify and hold [defendant] harmless" for any additional costs and fees incurred.

At the May 17, 2010 closing, it was agreed that defendant pay $100,000, to be followed by twelve monthly interest only payments of $1250 for a year – the timeframe allotted to obtain the NFA letter – followed by a balloon payment of $250,000. On May 17, 2011, defendant could not make the balloon payment and was granted an extension, on the condition that the monthly interest payment would double to $2500. When defendant defaulted on the loan again and owed $20,143.12 in property taxes, plaintiff served notice of default and intention to foreclose upon the property to defendant. Plaintiff sought compensatory damages due to defendant's default on the mortgage note, as well as attorney's

A-1719-17T1

fees and costs under the mortgage note.[2]   Defendant filed a counterclaim for breach of the indemnification agreement due to the property's contamination.

Aiello testified that in 1999, six oil tanks and contaminated soil were removed from the property.  At the time of the sale, Aiello stated there were no environmental issues as the oil tanks had been removed, and plaintiff was merely awaiting a NFA letter from the DEP.   Eventually, Krause testified that defendant's representative verbally agreed to the extension at an increased interest amount, and produced defendant's checks that confirmed the agreement. Kraus received a NFA letter for incident number 10-03-21-2157-38, dated August 31, 2010.

Leon Lewinson, defendant's sole owner, testified that Krause represented to him that plaintiff would obtain a NFA letter from the DEP.  He claimed he received a call from the DEP advising him that there were still open environmental issues on the property dating back to 1999.  Lewinson also asserted that his company incurred over $100,000 in contamination remediation costs, yet he failed to provide any expert testimony regarding the property's condition, or the amount of work, if any, that needed to be done.  He further

---

[2]  In a separate action in the Chancery Division, which is not the subject of the appeal, plaintiff filed a foreclosure action.

A-1719-17T1

failed to provide any documentary evidence to support the assertion that the remediation costs were paid.

At the conclusion of the trial, the judge reserved decision.[3] Less than a month later, the judge issued an oral decision, making the following factual findings:

> Pursuant to the terms of [the mortgage] note, the defendant, . . . agreed to make monthly, interest-only payments at an interest rate of 6 percent for one year[, and a]t the end of the year, the principal amount of $250,000 would be payable in a balloon payment.
>
> . . . [T]he parties . . . agree[d] to extend the terms of the [mortgage] note for one year . . . [and to increase the] interest . . . to 12 percent . . . .
>
> The Court further finds that the defendant defaulted on the mortgage note by failing to pay the balloon payment in [a] timely manner.

By defaulting on the mortgage note, the judge held that the note's terms obligated defendant to pay plaintiff's attorney's fees and costs. In so holding, the judge found:

---

[3] Prior to trial, defendant moved for summary judgment. The motion was denied by a different judge, who determined there were material factual disputes as to whether: defendant was entitled to enforce the indemnification agreement as it had already transferred the property; defendant's payments were compensable under the indemnification agreement; and the extent of the property's environmental contamination.

[P]laintiff has credibly proven by a preponderance of the evidence that damages include the $250,000 principle due on the [mortgage] note together with interest at a rate of 12 percent, since . . . the default on the note in May of 2013.

In addition, . . . plaintiff has proven that there is presently owed a tax lien of $20,143.12, together with interest.

Finally . . . plaintiffs are entitled to [attorney's] fees and costs. . . . Accordingly, . . . counsel for the plaintiff to submit . . . a certification of services to be considered in awarding [attorney's] fees.

With respect to defendant's counterclaim, the judge dismissed it because plaintiff obtained and provided defendant with the NFA letter from the DEP. The judge reasoned:

[T]he indemnification agreement was satisfied by plaintiff[] in obtaining the [NFA] letter from the [DEP,] . . . dated August 31st, 2010. . . .

Further, the defendant[] ha[s] provided no evidence that the [NFA] letter was not satisfactory, nor ha[s defendant] provided any evidence that -- any credible evidence that defendant[s] incurred any costs or expenses to do any environmental work for which the plaintiff w[as] contractually obligated. The only evidence was the testimony of [Lewinson] that was a hearsay statement from a [representative from the DEP] that there were problems with the property and that he spent a significant amount of money to clean up the property.

7

> The Court finds [Lewinson]'s testimony to be absolutely not credible, particularly given the fact that the fact-finder would expect that if he spent significant amounts of money to clean up the property that there would have been proofs, documentary proofs, testimony from people who did the work, and none of that was provided.

Thereafter, plaintiff's counsel submitted a certification of services seeking attorney's fees totaling $81,043.28.  On October 31, 2017, the judge entered an order of judgment awarding plaintiff $403,249.58, plus attorney's fees totaling $80,265.00, and costs totaling $261.28.

## II

Defendant argues before us that we should reverse the judge's order of judgment because he made errors of law and his decision was unsupported by the evidence in the record.  In essence, defendant makes five contentions.

First, defendant argues the judge erred as a matter of law because he "reformed the plain and unambiguous terms of the mortgage note [extra-judicially] in the absence of clear and convincing evidence."  In particular, defendant argues that section one of the mortgage provides: "[defendant] promise[s] to pay $0.00 (called "principal"), plus interest to the order of the [plaintiff]."  Defendant contends the principal was set at $0 because the parties had already agreed that the balance of the purchase price, $250,000, would be

placed in defendant's attorney's IOLTA non-interest-bearing trust account, which would be turned over to plaintiff once it provided defendant with a NFA letter from the DEP. Defendant maintains that "in spite of this clear expression of the parties' contractual intent," the judge rewrote the contract terms by finding that the "principle due" under the mortgage note was not $0, but actually $250,000.

Second, defendant argues that the judge's determination that the NFA letter satisfied the indemnification agreement was unsupported by, and inconsistent with, competent, relevant, and reasonably credible evidence in the record. It claims the NFA letter only concerned the DEP investigation identified as incident number 10-03-21-2157-38, related to a single 1,000-gallon heating oil underground storage tank, and not incident number 98-12-09-1139-50, concerning the contamination from six underground storage tanks that collectively could hold 11,550 gallons of gasoline and waste oil. Defendant alleges plaintiff was aware of the DEP investigation incident number 98-12-09-1139-50 when the indemnification agreement was executed and, therefore, agreed "to do everything in its power . . . in order to obtain" a NFA letter from the DEP with respect to that incident number. Since plaintiff never did so,

defendant maintains that plaintiff is still obligated to cover the remediation costs for the property under the indemnification agreement.

Third, defendant argues the judge failed to recognize the credible evidence that the $250,000 Lewinson deposited in its attorney's trust account was "used to pay attorney's fees and environmental cleanup" on the property as allowed by the indemnification agreement.

Fourth, defendant argues that the damages awarded to plaintiff exceeded the amounts compensable under the terms of the mortgage note. Defendant reasons that pursuant to the mortgage note, upon its default, plaintiff would be entitled to collect, "the full amount of all unpaid principal, interest, other amounts due [under] the[m]ortgage and [the mortgage n]ote and the plaintiff's costs of collection and reasonable attorney's fees." Defendant calculates the damages plaintiff could have collected as of the date of default as $286,636.78.[4] Defendant further alleges it is undisputed that after it defaulted, it made twenty-four subsequent payments of $2,500 each, totaling $60,000, and therefore the

---

[4]

| Unpaid Principal | $ 250,000.00 |
| Unpaid Interest | $ 0.00 |
| Taxes Plaintiff Paid | $ 20,143.12 |
| Late Charge | $ 13,507.16 |
| Attorney's fees | $ 2,986.50 |
| Total | $ 286,636.78 |

judgment should be further reduced taking account of these payments. Thus, it argues at most the $403,249.58 judgment should be reduced by $60,000.

Fifth, defendant alleges the attorney's fees award exceeded the permissible limits of Rule 4:42-9(a)(4).[5] The maximum attorney's fees allowed should be $4,182.50, which is $76,082.50 less than what was awarded.

Our review of the trial court's determinations following a non-jury trial is a limited one. Petrozzi v. City of Ocean City, 433 N.J. Super. 290, 316 (App. Div. 2013) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484, (1974)). We must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms, 65 N.J. at 483-84). Reviewing courts "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the

---

[5] Rule 4:42-9(a)(4) limits attorney's fees as follows:

> In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid . . . amounting to $5,000 or less, at the rate of 3.5%, . . . upon the excess over $5,000 and up to $10,000 at the rate of 1.5%[,] and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500[.]

11

competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, 65 N.J. at 484). Review on appeal "does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 161, (1964)).

We, however, owe no deference to the trial court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted). We review such decisions de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006) (citing Rova Farms, 65 N.J. at 483-84; Manalapan Realty, 140 N.J. at 378).

Guided by these principles, we affirm substantially for the reasons the judge expressed in his thorough oral opinion. We add the following brief comments.

Applying the clear and convincing evidence standard of proof as argued by defendant, we conclude this standard was satisfied based upon the judge's finding that defendant breached the contract in defaulting on payments, thereby

entitling plaintiff to damages. After defendant was given an extension to pay off the principal of $250,000, the parties agreed to double the interest payments to $2500 a month. Defendant's subsequent $2500 monthly interest payments clearly evidence the mortgage and note terms, and that the principal had not been paid. Moreover, defendant's claim that there was no debt as demonstrated by the fact that $0 was specified in the note as the principal amount owed was not raised at trial. Because the issue does not go to the jurisdiction of the trial court or concern matters of substantial public interest, we shall not consider the argument. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973).

As for the dismissal of defendant's counterclaim regarding the property clean up, we discern no reason to disturb the judge's findings. The indemnification agreement explicitly states that the property was contaminated by an abandoned underground storage tank and this is the same area of concern referenced in the NFA letter saying it was remediated. Defendant's claim that Aiello knew there was an open DEP case on the property identified as incident number 98-12-09-1139-50 was not supported by any trial testimony that there was the alleged contamination from six underground storage tanks. Thus, defendant failed to provide any evidence that the NFA letter was not compliant with the indemnification agreement.

13

Equally important, we take no issue with the judge's finding that defendant failed to prove that it incurred any remediation expenses for which plaintiff was obligated to pay in accordance with the indemnification agreement. Lewinson's representation that remediation expenses were paid from the $250,000 placed in the attorney's trust account was not supported by any documentary proof.

Finally, turning to the damages assessed by the judge, there is no reason to disturb his findings. The judge relied upon the adequate proofs plaintiff presented concerning its losses due to defendant's default. See Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987) ("Proof of damages need not be done with exactitude . . . . It is . . . sufficient that the plaintiff prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate."); see also Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 14 (2007). With respect to the award of attorney's fees, the judge properly relied on the terms of the mortgage and note that allowed for plaintiff to receive reasonable attorney's fees in the event of defendant's default, and was not limited by Rule 4:42-9. See Satellite Gateway Com. Inc. v. Musi Dining Car Co., 110 N.J. 280, 285-86 (1988).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1719-17T1