**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0125-23

HADDAD PLUMBING AND
HEATING, INC.,

     Plaintiff-Appellant,

v.

NEWBURGH WINDUSTRIAL
SUPPLY CO., INC. d/b/a
NEWBURGH WINDUSTRIAL
COMPANY,

     Defendant-Respondent.

_____

Argued on January 30, 2025 – Decided March 11, 2025

Before Judges Natali, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3755-21.

Michael A. Spizzuco, Jr. argued the cause for appellant (Brach Eichler, LLC, attorneys; Anthony M. Rainone, of counsel and on the briefs; Michael A. Spizzuco Jr., on the briefs).

Randy T. Pearce argued the cause for respondent (Pearce Law, LLC, attorneys; Randy T. Pearce, of

counsel and on the brief; Christopher O. Eriksen, on the brief; William R. Fenwick, on the brief).

PER CURIAM

Plaintiff Haddad Plumbing and Heating, Inc., appeals from the Law Division's September 11, 2023 order that: (1) granted summary judgment to defendant Newburgh Windustrial Supply Co., and dismissed its breach of contract claims after concluding plaintiff failed to substantiate its damages; (2) denied plaintiff's cross-motion for summary judgment as to liability on its breach of contract claim; and (3) granted its application with respect to defendant's counterclaims and accordingly dismissed those causes of action. We affirm in part, reverse in part, and remand for further proceedings.

First, because we are satisfied plaintiff presented sufficient evidence with respect to its asserted damages arising from defendant's purported breach, we reverse that portion of the court's September 11 order that granted summary judgment to defendant. Second, to the extent the court's order also dismissed plaintiff's fraud-based claims, we affirm based on plaintiff's counsel's representation at oral argument that plaintiff withdraws those counts. Third, we further affirm the court's order to the extent it granted plaintiff summary judgment and dismissed defendant's counterclaims as the motion record contains no proof of defendant's damages and defendant has not cross-appealed. Finally,

A-0125-23

we do not address that provision of the court's order that denied plaintiff's application as to liability on its breach of contract claim because the court did not address the merits of plaintiff's argument, nor make necessary factual findings and attendant legal conclusions, due to its determination regarding plaintiff's failure to adequately prove its damages.

I.

Plaintiff is a New Jersey corporation which provides "large-scale plumbing and HVAC design, installation, repair[,] and maintenance to facilities and properties in the New York Metropolitan area." Defendant is a New York corporation and "wholesaler of industrial supplies and equipment for commercial contractors."

The parties entered into a contract dated September 3, 2020, in which defendant agreed to sell plaintiff Schedule 40, or what is referred to by the parties as "standard" pipe, in varying quantities and prices, for a total of $336,920, excluding taxes. According to plaintiff, the parties entered into a separate contract on September 11, 2020, with respect to a different type of pipe.

Disputes ensued regarding the parties' respective performance under the contracts resulting in each accusing the other of material breaches. For its part, plaintiff maintains had defendant not breached the agreements, it would have

ordered $390,005.85 in pipe from defendant but instead was forced to purchase replacement product from a third-party vendor, North Shore Plumbing Supply, Inc., for a total of $1,011,017.01.

Plaintiff filed a six-count complaint, alleging defendant: (1) breached the parties' contracts; (2) breached an implied contract between the parties "to provide [d]efendant with pipe products at set prices contained within the [a]greement"; (3) breached the implied covenant of good faith and fair dealing; (4) promised to provide "certain pipe products at set pricing," which plaintiff relied upon to its detriment; (5) intentionally made false statements to induce plaintiff to enter the contract; and (6) regardless of intent, made false statements which plaintiff relied upon to its detriment. Plaintiff further contended it incurred damages in the amount of $621,011.16 as a result of defendant's breach. In its answer, defendant denied liability, asserted several affirmative defenses, and advanced three counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud.

Before the close of discovery, defendant moved for summary judgment seeking to dismiss plaintiff's complaint because it failed to adequately support its damages claim. The court denied the motion and explained, although "the evidence at this time is not strong" and would most likely be "insufficient" at a

4

bench trial, the case was "in the beginning of discovery."  It therefore denied defendant's application without prejudice, noting "if discovery doesn't flush out anything further than this and the people from North Shore or there's no deposition testimony sufficient to explain [the submitted documentary proofs], [the court] might have a very different opinion at the end of discovery."

Defendant renewed its summary judgment motion following the close of discovery, and plaintiff cross-moved for partial summary judgment "on the issue of breach of contract by [d]efendant" and defendant's counterclaims.  In support, defendant again asserted plaintiff failed to prove its damages, highlighting the different quantities reflected on the North Shore quote when compared to the parties' contract, and the lack of "any indication as to how many units [plaintiff] actually purchased."  It further contended plaintiff did not establish it "purchased the exact same units from North Shore that [it was] required to purchase from [defendant]."  Defendant also argued plaintiff provided no evidence the thirteen checks it produced during discovery purportedly issued to North Shore as cover for defendants alleged breach "actually correspond to specific amounts and sizes of [S]chedule 40 pipe."

Plaintiff opposed defendant's application and, as noted, cross-moved for summary judgment.  In its counterstatement of material facts, plaintiff averred

5

"North Shore provided [p]laintiff with two separate agreements each matching the type of pipe that would have been ordered from [d]efendant." In support, plaintiff submitted a certification from its principal, Shallan Haddad, in which he swore "[p]laintiff ordered the same types of pipe from North Shore at higher pricing than [d]efendant."

Plaintiff further maintained the deposition testimonies of Shallan and Joann Haddad,[1] plaintiff's Chief Financial Officer and General Counsel, supported plaintiff's position the checks produced in discovery evidenced purchases related to the North Shore quote, which represented plaintiff's obligation to purchase the same pipe and amount of pipe contemplated in the parties' contract. Specifically, at her deposition, Joann testified plaintiff was "obligated to buy it from [North Shore], just like [plaintiff] would have been obligated to buy it from [defendant]." Additionally, at his deposition, in response to questioning how the parties could determine plaintiff "actually purchased the same pipe from North Shore that [it] w[as] contractually obligated to purchase" from defendant, Shallan stated "[b]ecause [he] would call up North Shore and release the material as [he] need[ed] it."

---

[1] Because Shallan and Joann share a common surname, we refer to them by their first names and intend no disrespect.

Finally, Shallan submitted a certification that included the following table which summarized plaintiff's alleged damages:[2]

| Item | Price | Quantity | Credit (units) Ordered from Defendant | Total |
|------|-------|----------|----------------------------------------|-------|
| $\frac{1}{2}$" | $2.02/unit | 10,000 | 0 | $20,200.00 |
| $\frac{3}{4}$" | $2.54/unit | 15,000 | 5733 | $23,538.00 |
| 1" | $3.42/unit | 25,000 | 0 | $85,500.00 |
| 1 $\frac{1}{4}$" | $4.64/unit | 20,000 | 1,071 | $87,830.56 |
| 1 $\frac{1}{2}$" | $5.56/unit | 17,000 | 0 | $94,520.00 |
| 2" | $7.49/unit | 10,000 | 3108 | $51,621.08 |
| 2 $\frac{1}{2}$" | $7.65/unit | 1,000 | 0 | $7,650.00 |
| 3" | $10.00/unit | 10,000 | 546 | $94,540.00 |
| 4" | $14.25/unit | 10,000 | 840 | $130,530.00 |
| 6" | $25.00/unit | 7,000 | 0 | $175,000.00 |
| 8" | $37.68/unit | 4,000 | 315 | $138,850.80 |
| 1 $\frac{1}{4}$" | $2.40/unit | 1008 | 1008 | $0.00 |
| 1 $\frac{1}{2}$" | $2.77/unit | 2520 | 1281 | $3,432.03 |
| 2" | $3.50/unit | 3507 | 777 | $9,555.00 |
| 2 $\frac{1}{2}$" | $4.68/unit | 2016 | 630 | $6,486.48 |
| 3" | $5.75/unit | 4011 | 399 | $20,769.00 |
| 4" | $7.44/unit | 4011 | 399 | $26,873.18 |

---

[2] We note the first eleven items in the table refer to plaintiff's alleged agreement with North Shore to provide Schedule 40 pipe.

A-0125-23

| | | | | |
|---|---|---|---|---|
| 5" | $12.30/unit | 504 | 0 | $6,199.20 |
| 6" | $13.85/unit | 2016 | 0 | $27,921.60 |
| Total: | | | | $1,011,017.01 (North Shore Total) |
| | | | | - $390,005.85 (Def. Total) |
| | | | | $621,011.16 |

In a June 5, 2023 oral opinion, the court granted defendant's summary judgment motion. It also denied plaintiff's application for partial summary judgment with respect to its breach of contract claim, but granted its application to the extent it sought a dismissal of defendant's counterclaims. The court entered a conforming order memorializing its decision on September 11, 2023.

In its oral decision, the court concluded plaintiff's damages proofs were simply insufficient to support its breach of contract claim. The court explained it found it "very, very odd, to say the least, that [Joann and Shallan] said that they paid hundreds and hundreds of thousands of dollars to North Shore," but there were "no orders . . . emails . . . [or] text messages." It noted that among the evidentiary deficiencies, Shallan could not explain which precise type of pipe was ordered with each check, or even that the checks were for Schedule 40

8

pipe as contemplated in the parties' contract. Because there was no "proof of what [plaintiff] purchased," the court found it had "no choice but to dismiss the complaint because there is no evidence . . . sufficient to move forward on this." For the same reasons, the court denied plaintiff's cross-motion for partial summary judgment as to its breach of contract claim.

With respect to plaintiff's application seeking a dismissal of defendant's counterclaims, the court's decision again centered on the sufficiency of the damages proofs, and it found "a complete absence of proof" of damages, and accordingly granted plaintiff's cross-motion. Notably, the court commented its decision on both motions was "only on the issues of damages, which defeats the case, of course." It noted there was "no doubt [there are] questions about . . . whether there was a breach or not," but its decision was based on the "complete lack of damages proof on both sides sufficient to go to a jury."

## II.

On appeal, plaintiff contends the court improvidently granted summary judgment and made impermissible credibility determinations when doing so. It argues Joann's and Shallan's deposition testimony and Shallan's certification together with the "binding quotes" and checks issued to North Shore, created a material factual question as to its damages.

9

In deciding motions for summary judgment, we, like the court, review "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); R. 4:46-2. Summary judgment should be denied unless the moving party's right to judgment is so clear that there is no room for controversy. Akhtar v. JDN Props. at Florham Park, L.L.C., 439 N.J. Super. 391, 399 (App. Div. 2015). This means summary judgment should be granted only "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The court's function is not to weigh the evidence to determine the final outcome, but only to decide if a material dispute of fact exists. Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 27 (App. Div. 2012). It is not the judge's role to assess credibility or determine the truth of the evidence, DeWees v. RCN Corp., 380 N.J. Super. 511, 522 (App. Div. 2005), or to examine whether the preponderance of the evidence weighs towards one side or the other. Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 71 (App. Div. 2004). A motion judge may not abrogate the jury's exclusive role as the finder of fact. Suarez,

10

428 N.J. Super. at 27. In addition, we owe no special deference to the motion judge's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). Our review of an order granting summary judgment is de novo. Ibid.

To establish a breach of contract claim, the plaintiff must prove: (1) "the parties entered into a contract containing certain terms," (2) "plaintiff did what the contract required [it] to do," (3) "defendant did not do what the contract required [it] to do," and (4) "defendant's breach . . . caused a loss to the plaintiff." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)). "Each element must be proven by a preponderance of the evidence." Globe Motor, 225 N.J. at 482. The plaintiff must "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 14 (2007) (quoting Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)).

The Uniform Commercial Code (UCC), N.J.S.A. 12A:1-101 to :10-106, "fixes the obligations imposed on both buyers and sellers relating to the sale of goods, as well as their respective remedies for nonperformance by the other

party." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 363 (2011). Generally, "the UCC's remedies are to be 'liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed.'" Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 426 (1997) (quoting N.J.S.A. 12A:1-106). N.J.S.A. 12A:2-711 and -712 describe the remedies available to a buyer upon a breach of a contract governed by the UCC.

In the event of the seller's repudiation, the buyer may recover as damages "so much of the price as has been paid," N.J.S.A. 12A:2-711(1), and may also "'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller," permitting it to recover "the difference between the cost of cover and the contract price," N.J.S.A. 12A:2-712(1) and (2). Cover goods "need not be identical to contract goods," but must be "commercially useable as reasonable substitutes under the circumstances of the particular case." Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 477 (1988) (quoting N.J.S.A. 12A:2-712 off. cmt. 2).

Applying these legal principles, we are satisfied plaintiff's proofs were sufficient to present a jury issue as to its breach of contract claims. Therefore, defendant was not entitled to summary judgment on that issue.

Plaintiff's evidence included Shallan's certification in which he attested plaintiff purchased the same Schedule 40 pipe from North Shore that it had contracted to purchase from defendant. Shallan's certification further detailed the quantity of Schedule 40 pipe plaintiff was allegedly required to purchase, and the increased prices plaintiff was purportedly forced to pay to North Shore as a result of defendant's alleged breach. Finally, Joann and Shallan testified at their depositions that plaintiff placed orders with North Shore for the same amount of Schedule 40 pipe it was obligated to purchase from defendant.

Although we agree with defendant that plaintiff's documentary proofs were hardly without their evidentiary deficiencies, they were sufficient for plaintiff to present its breach of contract claim to a factfinder under common law and UCC contract principles. See Suarez, 428 N.J. Super. at 27. The factfinder is free to reject that evidence in whole or in part and, of course, may base its decision on the credibility, or lack thereof, of the testimony of any party or third-party witness and nothing in our opinion should be interpreted as an

expression of our views on the merits of plaintiff's claims or its damages proofs. We simply conclude on the motion record plaintiff marshalled sufficient evidence at the summary judgment stage to permit the factfinder to determine if defendant's alleged breach caused plaintiff's damages and the amount of its losses, if any.[3]

Conversely, the motion record is devoid of any evidence supporting defendant's damages related to its counterclaims. Further, as defendant concedes in its merits brief, it "elected not to file a cross-appeal of the Law Division's dismissal of its counterclaims against [plaintiff]." As such, we affirm the court's decision granting plaintiff's application for summary judgment as to defendant's counterclaims.

With respect to plaintiff's allegations of fraud contained in counts five and six of its complaint, we need not address whether summary judgment was appropriate because at oral argument before us, plaintiff's counsel agreed to "withdraw the fraud claims," conceding "[a]t this point I don't know that there's

---

[3] We would be remiss if we did not observe the illaudable conduct of Shallan at his deposition. On no less than thirty occasions he directed reprehensible and inexcusable vituperative epithets towards defendant's counsel. We do not address the issue further because there is no order before us that dealt with the referenced conduct. Nothing in our opinion, however, restricts defendant from making any application on remand with respect to plaintiff's principal's deposition behavior.

enough there for fraud." Accordingly, we deem those counts voluntarily dismissed.

Finally, we decline to address plaintiff's challenge to that portion of the court's order that denied it summary judgment on liability with respect to its breach of contract claim. We do not address the issue because the court did not make necessary factual findings and related legal conclusions on this point in light of its determination that plaintiff failed to substantiate its damages. Under the circumstances, we decline to exercise our original jurisdiction to resolve the issue. See Henebema v. Raddi, 452 N.J. Super. 438, 452 (App. Div. 2017) (noting "[w]e must exercise our original fact-finding authority sparingly and only in clear cases that are free of doubt"). Instead, on remand, plaintiff may refile its summary judgment application.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15